## PACIFIC NATIONAL BANK *v.* EATON.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 239. Argued March 23, 24, 1891.—Decided May 25, 1891.

*Delano* v. *Butler,* 118 U. S. 634, and *Aspinwall* v. *Butler,* 133 U. S. 595, affirmed and applied to a case where a shareholder in the bank, having subscribed her proportional share to the doubling of its capital and paid therefor, took out no certificate for the new stock and demanded back the money so paid.

A subscription to stock in a national bank, and payment in full on the subscription and entry of the subscriber's name on the books as a stockholder, constitutes the subscriber a shareholder without taking out a certificate.

THIS was an action at law to recover from the Pacific National Bank an amount paid in as a subscription to an increase of its stock. The circumstances which induced the call for the increase are stated fully in *Delano* v. *Butler,* 118 U. S. 634, and *Aspinwall* v. *Butler,* 133 U. S. 595. The plaintiff below, (defendant in error,) owning forty shares of $100 each, subscribed for an equal amount in the proposed increase of $500,000; and paid in the money. Owing to the fact that some stockholders declined to take the new stock, the actual amount

of increase subscribed was $461,300, and, after the plaintiff's payment of the $4000, an increase to that amount only was approved by the comptroller in lieu of the $500,000 previously authorized. The plaintiff below, not having taken out any certificate of stock, demanded repayment of the $4000, and, the same being refused, brought this action, and obtained judgment for that amount, interest and costs. The bank having become insolvent, the action was defended by the receiver, who sued out this writ of error.

*Mr. A. A. Ranney* for plaintiff in error.

*Mr. J. H. Benton, Jr.,* for defendant in error.

The decision of the state court that the bank received the money of the defendant in error upon an implied promise to give her forty shares in an increase of five thousand shares was correct. An increase of the capital of a national bank depends on compliance with the conditions of the statutes and articles of association; and not upon an arrangement between the bank and its shareholders or other persons. Rev. Stat. § 5142; *Charleston* v. *People's Nat. Bank,* 5 So. Car. 103, 115.

The payment by the defendant on the 1st of October was an acceptance of this offer, and created a contract between her and the bank, by which it promised to issue to her forty shares of such five thousand new shares, if the whole five thousand were subscribed and paid for and the comptroller approved their issue, and by which she promised the bank to take forty shares of such proposed increase of five thousand shares, if the whole five thousand were subscribed and the comptroller approved their issue, *i.e.,* if such five thousand shares were created. *Spring Company* v. *Knowlton,* 103 U. S. 49.

It was upon this implied contract to issue and to take forty shares of stock in the proposed increase of five thousand shares, if such shares were created, that the defendant paid to the bank four thousand dollars. If the whole five thousand shares were not subscribed and paid for, or if the comptroller

refused to approve their issue, no such shares as were paid for could be created, and the bank was under no obligation to issue any shares to her, and it necessarily follows that unless the whole five thousand shares were subscribed and paid for, and the comptroller approved the issue of them, she was under no obligation to take forty shares of any other increase which might be voted, subscribed and paid for and approved.

The attempted application by the bank of her money to the payment for forty shares in an increase of forty-six hundred and thirteen shares, instead of the payment for forty shares in an increase of five thousand shares, was really an attempt to make her take forty-three shares, when she had only agreed to take forty. *People's Ferry Co.* v. *Balch,* 8 Gray, 303, 314; *Katama Land Co.* v. *Jernegan,* 126 Mass. 155.

It is too plain for contention that no shares in a proposed increase of the capital of a national bank can come into existence till the whole amount thereof is paid. Such is the plain reading of the statute: "No increase shall be valid until the whole amount of such increase is paid in." If this were a case of subscription to original capital under a charter which provided that no capital stock shall be issued until the whole amount of the capital has been subscribed for, the authorities are uniform that a subscription for shares would not be binding until the whole amount of the capital was subscribed. *Santa Cruz Railroad Co.* v. *Schwartz,* 53 California, 106; *Bray* v. *Farwell,* 81 N. Y. 600; *New York, Housatonic, etc. Railroad Co.* v. *Hunt,* 39 Connecticut, 75; *Read* v. *Memphis Gayoso Gas Co.,* 9 Heiskell, 545; *Fry* v. *Lexington etc. Railroad Co.,* 2 Met. (Ky.) 314, 323; *Shurtz* v. *Schoolcraft & Three Rivers Railroad Co.,* 9 Michigan, 269; *Swartwout* v. *Michigan Air Line Railroad Co.,* 24 Michigan, 388; *Livesey* v. *Omaha Hotel Co.,* 5 Nebraska, 50; *Hale* v. *Sanborn,* 16 Nebraska, 1; *Selma, Marion, etc. Railroad Co.* v. *Anderson,* 51 Mississippi, 829; *Hughes* v. *Antietam Mfg. Co.,* 34 Maryland, 316; *Topeka Bridge Co.* v. *Cummings,* 3 Kansas, 55; *Littleton Mfg. Co.* v. *Parker,* 14 N. H. 543; *New Hampshire Central Railroad* v. *Johnson,* 30 N. H. 390; *S. C.* 64 Am. Dec. 800; *Contoocook Valley Railroad Co.* v. *Barker,* 32 N. H. 363; *Peoria & Rock*

*Island Railroad* v. *Preston*, 35 Iowa, 115 ; *Haskell* v. *Worthington*, 94 Missouri, 560 ; *Sommerset & Kennebec Railroad* v. *Cushing*, 45 Maine, 524 ; *Sommerset Railroad Co.* v. *Clarke*, 61 Maine, 379 ; *Jewett* v. *Valley Railroad Co.*, 34 Ohio St. 601 to 607 ; *Winters* v. *Armstrong*, 37 Fed. Rep. 508 ; *Wontner* v. *Shairp*, 4 C. B. 404, 441 ; *Pitchford et al.* v. *Davis*, 5 M. & W. 1 ; *Allman* v. *Havana, Rantoul & Eastern Railroad Co.*, 88 Illinois, 521 ; *Hendrix* v. *Academy of Music*, 73 Georgia, 437 ; *Salem Milldam Corporation* v. *Ropes*, 6 Pick. 23 ; *Katama Land Co.* v. *Jernegan*, 126 Mass. 155.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case belongs to the same group as *Delano* v. *Butler* (118 U. S. 634) and *Aspinwall* v. *Butler* (133 U. S. 595). It relates to certain shares of the increased stock of the Pacific National Bank of Boston issued in September, 1881. The circumstances under which said stock was created and subscribed are detailed in the reports of the cases referred to, and need not be repeated here. It will suffice to state those which are peculiar to the present case, only adverting to such others as may be necessary to understand it. On September 13, 1881, the capital stock of the bank was $500,000, and on that day the directors voted that the capital be increased to $1,000,000, and that the stockholders have the right to take the new stock at par, in equal amounts to that then held by them. Subscriptions to the new stock were payable October 1, 1881. Mary J. Eaton, the defendant in error, having forty shares (equal to $4000) of the original stock, took her full share of the new stock, and paid for it September 28, 1881, and received the following receipt therefor:

" Pacific National Bank,

"$4000.                                   *Sep. 28*,

" BOSTON, *October 1st*, 1881.

" Received of Mary J. Eaton four thousand dollars on account of subscription to new stock.

" J. M. PETTENGILL, *Cashier*."

The stockholders of the bank did not all avail themselves of the right to take new stock, but $461,300 of the $500,000 were taken and paid in. At the request of the directors, with the sanction of a large majority of the stockholders, the increase of stock was afterwards limited to the said sum paid in, and approved by the comptroller of the currency, who made and executed his certificate to that effect. Certificates for the new stock were made out in a book, with stubs to indicate their contents, and were delivered to the stockholders as they called for them. Such a certificate was made out for Miss Eaton, but she never called for it, though she was registered in the stock register of the bank as owner thereof without her knowledge.

The statement of facts, amongst other things, has the following:

"No certificate of stock in said proposed increase of capital in the amount of five hundred thousand dollars was made by the bank, nor was any certificate in said claimed increase of four hundred and sixty-one thousand three hundred dollars received by or offered to the plaintiff, but when the certificate from the comptroller, made December 16, was received by the bank a certificate of forty shares in said claimed increase of four hundred and sixty-one thousand three hundred dollars was made by the bank, a copy of which is hereto annexed, marked C, which was never called for, taken by, or tendered to the plaintiff, but still remains in the certificate book, and she was then registered in the stock register of the bank as the owner thereof without her knowledge. No certificates in said claimed increase were ever tendered by the bank to any persons to whom they were made, but were delivered to them when called for. No communication was made to the plaintiff with reference to said vote of the directors of December 13, or change in said proposed increase, or said certificate of said comptroller, or said certificate made to her, and she never assented to any change in the proposed increase in the sum of $500,000."

On the 10th of January, 1882, there was held an annual meeting of the stockholders of the bank for the election of

directors and other business, at which it was voted, in accordance with an order from the comptroller of the currency, made under section 5205 of the Revised Statutes, to make an assessment of 100 per cent upon the shareholders of the bank, *pro rata* for the amount of capital stock held by each; the vote being 5494 shares for the assessment and 55 shares against it. The defendant in error on the day of the annual meeting, and before its opening, made the following demand upon the bank in writing, delivered to the directors:

"BOSTON, *January* 10, 1882.

"To the Pacific National Bank:

"The conditions upon which you received four thousand dollars of me on the twenty-eighth day of September, 1881, not having been performed, I hereby demand repayment of said four thousand dollars.                "MARY J. EATON,

"By J. H. BENTON, JR., *Att'y.*"

She never paid the assessment made on the 10th of January, but on the 14th of March, 1882, she brought this suit in the Superior Court for the County of Suffolk, to recover back the four thousand dollars which she had paid for the new stock. The cause having been removed to the Supreme Judicial Court of Massachusetts, was tried in May, 1886, and judgment rendered for the plaintiff in May, 1887, a few months after the decision of this court in the case of *Delano* v. *Butler*, 144 Mass. 260, 269. The Supreme Judicial Court in its opinion drew a distinction between that case and the present. Its language is as follows:

"The case raises a question which was suggested, but not decided, in *Delano* v. *Butler*, 118 U. S. 634. It was there said: 'It will be observed that, without waiting to see what the future action of the association and the comptroller of the currency might be on the question of the ultimate amount of the increased stock, the plaintiff in error paid for his shares and accepted his certificate. This he did, in legal contemplation, with knowledge of the law which authorized the association and the comptroller of the currency to reduce the amount

of the proposed increase to a less sum than that fixed in the original proposal of the directors, and such payment and acceptance of the certificates in accordance therewith might amount, under such circumstances, on his part, to a waiver of the right to insist that he should not be bound unless the whole amount of the proposed increase should be subscribed for and paid in; but without insisting upon that point or deciding it, we think that the subsequent conduct of the plaintiff in error amounts to a ratification.' 118 U. S. 650. In the present case the plaintiff paid in her money, but did not accept a certificate of stock."

The court also assumed that the filling of the whole $500,000 of stock was a condition on which the obligation of the subscribers to the new stock to take the same depended. The latter point was fully considered by us in the case of *Aspinwall* v. *Butler*, and we held that the filling of the said $500,000 of additional stock was not a condition of the liability of the subscribers to the new stock, but that the association always retained the power of reducing the amount of stock, with the approval of the comptroller of the currency. It is unnecessary for us to discuss that question again. The defendant in error was just as much bound by her subscription to the new stock as if the whole $500,000 had been subscribed and paid in. The only question to be considered, therefore, is whether the fact that the defendant in error did not call for and take her certificate of stock made any difference as to her status as a stockholder. We cannot see how it could make the slightest difference. Her actually going or sending to the bank and electing to take her share of the new stock, and paying for it in cash, and receiving a receipt for the same in the form above set forth, are acts which are fully equivalent to a subscription to the stock in writing, and the payment of the money therefor. She then became a stockholder. She was properly entered as such on the stock book of the company, and her certificate of stock was made out ready for her when she should call for it. It was her certificate. She could have compelled its delivery had it been refused. Whether she called for it or not was a matter of no consequence whatever in reference to her rights and duties.

The case is not like that of a deed for lands, which has no force, and is not a deed, and passes no estate, until it is delivered. In that case everything depends on the delivery. But with capital stock it is different. Without express regulation to the contrary, a person becomes a stockholder by subscribing for stock, paying the amount to the company or its proper officer, and being entered on the stock book as a stockholder. He may take out a certificate or not, as he sees fit. Millions of dollars of capital stock are held without any certificate; or, if certificates are made out, without their ever being delivered. A certificate is authentic evidence of title to stock; but it is not the stock itself, nor is it necessary to the existence of the stock. It certifies to a fact which exists independently of itself. And an actual subscription is not necessary. There may be a virtual subscription, deducible from the acts and conduct of the party.

The whole matter with regard to the new stock of the Pacific National Bank of Boston was so fully discussed in the cases of *Delano* and *Aspinwall* that it would be a work of supererogation to prolong this opinion. The judgment of the Supreme Judicial Court of Massachusetts is

*Reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*