## AVERY v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 791 and 792. Argued April 5, 1934.—Decided April 30, 1934.

*Mr. Leland K. Neeves* for petitioner.

*Assistant Solicitor General MacLean,* with whom *Solicitor General Biggs, Assistant Attorney General Wideman,* and *Messrs. Julius C. Martin, James W. Morris,* and *Morton K. Rothschild* were on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The petitioner was a large stockholder, and president, of the United States Gypsum Company. In November, 1924, the Company declared a dividend payable on or before the 31st day of December following. Its check, dated December 31st, for the amount attributable to his stock, payable to him, was received by petitioner January 2, 1925. In November, 1929, another dividend was declared, payable on or before the following December 31st, and the Company's check for petitioner's portion was received by him January 2, 1930.

Annually, dividend checks, signed by the proper corporate officers and dated December 31st, were on that day mailed out to all stockholders except those who were officers and employees, including the petitioner. Checks for the latter were held in the treasurer's office until the first business day of the next month and then distributed through the office mail.

The Company declared dividends quarterly; and in every instance they were made payable on or before the

last day of some month. The dividend checks never left the treasurer's office or went to the mailing department until the afternoon of the last day of the month. They were mailed on the last day of the month so as to be in the stockholders' hands on the first business day of the following month. The practice was without exception that no stockholder, whether employee or officer, should receive his check before the first business day of the month following the month in which the dividend was made payable.

Petitioner kept his accounts on the cash receipts and disbursements and calendar year basis.

The Commissioner assessed the dividends above described as part of the petitioner's income for the years 1924 and 1929. The Board of Tax Appeals approved; and the court below affirmed this action. The facts are not in dispute. The only question for our determination is when, within intendment of the statutes, the dividends were "received" by petitioner.

He maintains that under the plain language of the Revenue Acts of 1924 and 1928 the dividends—like other assessable items—should be treated as income for the taxable years during which they were actually received—1925 and 1930. The Commissioner claims that under Treasury Regulations promulgated in 1921 and in effect ever since, the dividends constituted income for the years in which they were declared and made payable.[1] The regulation specially important here (No. 65, Art. 1541) follows:—

" Dividends. . . . A taxable distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands."

---

[1] See Treasury Regulations, No. 62 (1921), Arts. 53 and 1541; No. 65 (1924), Arts. 52 and 1541; No. 69 (1926), Arts. 52 and 1541; Nos. 74 and 77 (1928–32), Arts. 333 and 621.

The Revenue Act of 1924, c. 234, 43 Stat. 253, provides—

" Sec. 212. (b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

" Sec. 213. For the purposes of this title, . . .

"(a) The term ' gross income ' includes gains, profits, and income. . . . The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be property accounted for as of a different period. . . .

" Sec. 1001. The Commissioner, with the approval of the Secretary, is authorized to prescribe all needful rules and regulations for the enforcement of this Act."

Sections 41, 42 and 62, Revenue Act of 1928, c. 852, 45 Stat. 791, are substantially like corresponding ones quoted from the 1924 Act. Similar provisions appear in the Revenue Act of 1918 and all subsequent ones.

The Revenue Act of 1921, c. 136, 42 Stat. 227, 229, is peculiar in that it makes distinction between dividends and other income items by the following provision which does not appear in subsequent Acts.

" Sec. 201. (e) For the purposes of this Act, a taxable distribution made by a corporation to its shareholders or

members shall be included in the gross income of the distributees as of the date when the cash or other property is unqualifiedly made subject to their demands."

If we give the words of the statutes their ordinary meaning, clearly the dividends under consideration were not actually received by the taxpayer during 1924 and 1929. Certainly, they were not received when declared. They did not come into the taxpayer's hands on December 31st simply because payable on that day. And unless Congress has definitely indicated an intention that the words should be construed otherwise, we must apply them according to their usual acceptation.

The petitioner insists that the word "receive" is free from ambiguity and admits of no interpretation; the statute furnishes the sole measure as to when dividends are to be reported.

In behalf of the Commissioner it is said—

The Revenue Act directs that the amount of all such (specified) items shall be included in the gross income for the taxable year in which received by the taxpayer. The word "received," as applied to dividends, is not entirely clear since there are different times at which it reasonably may be claimed the taxpayer receives them. To meet this situation the Commissioner promulgated the regulation that dividends are taxable when unqualifiedly made subject to the stockholder's demand. This provision has been included in all Treasury Regulations since 1918 and has been approved and accepted by Congress through subsequent re-enactments of the statute. When a dividend unqualifiedly becomes subject to a taxpayer's demand is essentially a question of fact. Here, the Board of Tax Appeals and the Circuit Court of Appeals agree that the dividends were subject to the taxpayer's demand on December 31st.

It is unnecessary for us to determine how far the quoted Treasury Regulation was incorporated into the Acts of

1924 and 1928. If we assume that the Regulation, in effect, became part of those enactments, nevertheless we think the Commissioner's action was erroneous. In the disclosed circumstances the dividends cannot properly be considered as cash or other property unqualifiedly subject to the petitioner's demand on December 31st. It was the practice of the Company to pay all dividends by checks not intended to reach stockholders until the first business day of January; there is nothing to show that petitioner could have obtained payment on December 31st, he did not expect this and the practice shows the company had no intention to make actual payment on that day. Nothing indicates that it recognized an unrestricted right of stockholders to demand payment except through checks sent out in the usual way. The checks did not constitute payments prior to their actual receipt. The mere promise or obligation of the corporation to pay on a given date was not enough to subject to petitioner's unqualified demand " cash or other property "; and none of the parties understood that it was.

This subject has been considered with varying results in *Commissioner* v. *Bingham*, 35 F. (2d) 503 (1929); *Hadley* v. *Commissioner*, 59 App.D.C. 139; 36 F. (2d) 543 (1929); *Commissioner* v. *Adams*, 54 F. (2d) 228, 230 (1931); *Shearman* v. *Commissioner*, 66 F. (2d) 256 (1933). The facts here disclose a situation substantially like that in the *Adams* case; and we agree with the conclusion of the court therein, stated as follows: " We are also of the opinion that, on the facts found, the dividends were ' not unqualifiedly made subject to the demand of the stockholder,' in the year 1924, if article 52 of the Departmental Regulations can be said to be valid and not in conflict with the express language of section 213 (a)."

*Reversed.*