**COMMISSIONER OF INTERNAL REVENUE
v. SCATENA.**

**No. 8067.**

Circuit Court of Appeals, Ninth Circuit.

Sept. 21, 1936.

Sewall Key, John MacC. Hudson, Louise Foster, and L. W. Post, Sp. Assts. to the Atty. Gen., for petitioner.

Bacigalupi, Elkus & Salinger and Tadini Bacigalupi, all of San Francisco, Cal., and Philip G. Sheehy, of San Jose, Cal., for respondent.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

In 1928, Elvira Scatena, a widow, respondent herein, was the owner of 5,201 shares of stock of the Bancitaly Corporation and of 1,800 shares of stock of the National Bankitaly Company. She was also the owner of 240 shares of stock of "Bank of Italy N. T. and S. A. and/or National Bankitaly Company," for which the purchase price had not been fully paid.

On September 19, 1928, the Bancitaly Corporation declared a dividend of 130,000 shares of the stock of the Bank of America National Association, one share to the holder of each 40 shares of its own stock of record at the close of business November 1, 1928. On September 26, 1928, the National Bankitaly Company declared a similar dividend of the same stock.

On or about November 1, 1928, the Bancitaly Corporation delivered the 130,-000 shares of the capital stock of the Bank of America N. A., and the National Bankitaly Company delivered 50,000 shares of the capital stock of the Bank of America N. A., to the official transfer agent for the Bank of America N. A., and there were issued in their place and stead separate certificates to each of the stockholders of Bancitaly Corporation and National Bankitaly Company entitled thereto in accordance with the list furnished the transfer agent. The certificates were delivered to the Trust Department of the Bank of Italy N. T. and S. A. for delivery to the stockholders of Bancitaly Corporation and National Bankitaly Company. Respondent was entitled to a total of 169 shares of this stock by virtue of her holdings. Three certificates were issued in respondent's name for 30, 39, and 100 shares, respectively, signed by the transfer agent and registrar on or before December 5, 1928. The 6 shares of the Bank of America N. A. stock to which she became entitled by virtue of her ownership of 240 shares of "Bank of Italy N. T. and S. A. and/or National Bankitaly Company" were issued in the name of National Bankitaly Company.

Some certificates of stock were delivered by the transfer agent to the Trust Department of Bank of Italy N. T. and S. A. for delivery to the shareholders prior to November 22, 1928, some between that date and December 31, 1928, and the remainder in January, 1929. Notices to stockholders entitled to fractional shares were mailed to such stockholders on November 22, 1928.

A dividend of $1.12½ per share was declared by the board of directors of the Bank of America N. A. on December 3, 1928, payable in cash on January 2, 1929, to stockholders of record December 8, 1928. Respondent received dividend checks early in 1929 from the Bank of America N. A. on the 175 shares received as a dividend and on 298 shares which she had purchased. She also received in 1929 a dividend of $6.75 on the 6 shares of Bank of America N. A. stock acquired as a dividend upon the completion of payment of the purchase price of 240 shares of Bank of Italy N. T. and S. A. stock.

The Bancitaly Corporation made its bookkeeping entries concerning the dividend declaration on October 31, 1928, charging "Surplus a/c" with the cost of the 130,000 shares and crediting "Investment." A similar entry was made on the same day by the National Bankitaly Company concerning its dividend of 50,000 shares.

Mrs. Scatena filed her income tax returns for the year 1929 on the calendar year and cash basis. Her return for the calendar year of 1928 was filed April 25, 1929, and she did not report as income any amount whatsoever representing the value of the 175 shares of the capital stock of the Bank of America N. A. received as a dividend. She did not include as income in her 1929 income tax return any amount whatsoever representing the value of the above-mentioned 175 shares of the capital stock of the Bank of America N. A.

A telegram was sent by the Bank of Italy Trust Department on January 25, 1929, to the Commissioner of Internal Revenue at Washington, D. C., stating that a dividend had been declared in 1928, but that the stock certificate was not available until January 7, 1929, and, although stock had been transferred to individual's name December 8, 1928, the certificate could not have been obtained until January 7, 1929. The questions asked were: "Was this stock constructively received last year [1928]?" and "In what year should this be reported as income?" An answer was received by the Bank of Italy from the deputy commissioner stating that, if the stock distributed as a dividend first became unqualifiedly subject to demand of stockholders January 7, 1929, this is the date on which the dividend should be treated as paid and income realized by the stockholders. After an exchange of telegrams and letters, the deputy commissioner wired John P. McLaughlin, the then collector of internal revenue at San Francisco, as follows: "Your letter ninth relative recent distribution Bank of America stock of Bancitaly Corporation facts show stock distributed as dividend first became unqualifiedly subject to demand of stockholders January seven and that is date on which dividend

is to be treated as paid and income realized by stockholders." It should be borne in mind that these letters and telegrams did not specifically refer to the taxpayer herein, but were of a general nature, referring to all who fell within their scope.

It appears that the statute of limitations now bars the satisfaction of a deficiency upon the dividends in the year 1928.

The applicable articles of Treasury Regulations 74, relating to the income tax under the Revenue Act of 1928, are as follows:

Article 333. "* * * Dividends on corporate stock are subject to tax when unqualifiedly made subject to the demand of the shareholder. * * *"

Article 621. "* * * A taxable distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands. (See article 333.)"

Article 627. "Dividends paid in securities or other property (other than its own stock) in which the earnings of a corporation have been invested, are income to the recipients to the amount of the market value of such property when receivable by the shareholders. * * * Where a corporation declares a dividend payable in stock of another corporation, setting aside the stock to be so distributed and notifying the shareholders of its action, the income arising to the recipients of such stock is its market value at the time the dividend becomes payable. (See article 333.) * * *"

The only question involved is whether the stock dividend became unqualifiedly subject to the demand of the taxpayer in the calendar year 1928 or 1929. If the former, the collection of the tax is barred by the statute of limitations; if the latter, the decision of the Board of Tax Appeals must be reversed.

■ The stipulation of facts is silent as to when the certificates were actually received, and the Commissioner would have us believe that the actual receipt of the certificates was in 1929. This we cannot assume, for there was no evidence given or testimony taken, but the cause was submitted upon an agreed statement of facts, which, intentionally or otherwise, does not disclose the actual date of receipt. In view of Treasury Regulations 74, the pertinent articles of which are set out above, the date of actual receipt is not vital; our problem is to decide when the dividends were made unqualifiedly subject to the demand of the taxpayer.

■ The Commissioner cites Cohen v. Commissioner, 77 F.(2d) 184, 185 (C.C. A.6), which holds: "It is the general rule that a dividend is taxable in the year in which it is received, and not in the year in which it is declared." To the same effect is Mason v. Routzahn, 275 U.S. 175, 178, 48 S.Ct. 50, 72 L.Ed. 223, which was cited as authority in the Cohen Case, supra. Unquestionably, under the statute this is the correct rule. Here, however, the parties have failed to enlighten us of the date of the actual delivery of the certificates for the dividends; we must, therefore, look to facts given us for the date when the dividends were unqualifiedly made subject to the demand of the stockholder.

■■ A dividend declared by one corporation of the stock of another corporation is regarded as a cash dividend (Fletcher, Cyc.Corps. § 3677, p. 6177), and its value is determined by the actual value of the stock of the subject of the dividend, on the date of the declaration. The lawful declaration of a dividend creates a debt from the corporation to the stockholders, and, when a segregation is made to the amount of the dividend, the amount thereof is held by the corporation as trustee for the stockholders. In re Sutherland, 23 F. (2d) 595, 599 (C.C.A.2); Bryan v. Welch et al., 74 F.(2d) 964, 970 (C.C.A.10); Bulger Block Coal Co. v. U. S., 48 F.(2d) 675, 680, 681 (Ct.Cl.); Staats v. Biograph Co., 236 F. 454, 458, L.R.A.1917B, 728 (C.C.A.2). Such a dividend cannot be rescinded. Fletcher Cyc.Corps. § 3653, p. 6064; Morawetz, Corps. § 445, p. 419.

■ Here the dividends were declared in the latter part of September, 1928; on November 1, 1928, the shares of stock were delivered to the transfer agent; on October 31, 1928, both corporations made their bookkeeping entries to write off the distributable shares. Thus by November 1, 1928, the stock was out of the hands of the corporations declaring the dividend, and they no longer had possession of the certificates of stock representing the dividend. How soon the stockholders entitled to the dividend would receive the certifi-

cates depended upon the speed with which the transfer agent worked.

This brings us to another point, the distinction between shares of stock and certificates of stock.

■ "Shares of stock and certificates for shares of stock are different legal entities. Shares of stock 'are intangible and rest in abstract legal contemplation.' They are the interest or right which the owner has in the management, profits and assets of a corporation. 14 C.J. §§ 506, 509. Though incorporeal, they nevertheless are property and are the subject of conversion. 14 C. J. § 509; 7 R.C.L. § 166; Skinner v. Eaton, Collector (C.C.A.) 45 F.(2d) 568. A certificate of stock, on the other hand, is a symbol or paper evidence of the ownership of shares; it is not the stock itself. It is merely written evidence, and then only prima facie evidence, of the ownership thereof by the person designated therein and of the rights and liabilities resulting from such ownership. 14 C.J. §§ 698, 701, 702, 707, 709, 710, 1043. Howbert v. Penrose (C.C.A.) 38 F.(2d) 577, 579, 68 A.L.R. 820. A stockholder may prove his ownership of shares by evidence other than that of the certificate, 14 C.J. § 1272; and he may dispose of his shares and surrender his title therein by sale accompanied with delivery of a certificate in his name which he has endorsed with a blank assignment and power of attorney authorizing the transfer. 14 C.J. §§ 1033, 1050; 7 R. C.L. §§ 239, 243. As between seller and buyer the shares pass by mere delivery of the certificate, so endorsed, though the transfer as between the new owner and the corporation is not complete until made on the books of the corporation." Snyder v. Commissioner, 73 F.(2d) 5, 7 (C.C.A.10).

The respondent could be a shareholder in a corporation without ever receiving a certificate, so it would not make much difference when or if a certificate was received. See Pacific Nat. Bank v. Eaton, 141 U.S. 227, 233, 11 S.Ct. 984, 35 L.Ed. 702; Appeal of Minal E. Young, etc., 6 B.T.A. 472, 509. Whether the taxpayer received her certificates or whether they would have been delivered to her on demand, in the calendar year 1928, is, of course, purely speculative, but it is not vital to our discussion. The declaring corporations had done all that it was possible for them to do to transfer title to the shares to the stockholders.

Another factor which tended to establish the passage of title to the shares of stock is that the Bank of America N. A. declared on December 3, 1928, a cash dividend payable on January 2, 1929, to stockholders of record on December 8, 1928, which the respondent received early in 1929.

All this seems to prove that the intention of the declaring corporations was that title to the dividends passed at the time of declaration or, at the latest, at the time of delivery of the certificates to the transfer agent. Hoffman v. Commissioner, 71 F. (2d) 929, 930 (C.C.A.2). This disposes of Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 677, 78 L.Ed. 1216, cited by the Commissioner, where the intention and practice of the declaring corporation was that no stockholder should receive his dividend check before the first day of the month following the month in which the dividend was made payable. There the dividends were "not 'unqualifiedly made subject to the demand of the stockholder,'" until the first day of the month following the month in which they were payable. Compare also Commissioner v. Adams, 54 F.(2d) 228 (C.C.A.1).

■ At the time in controversy the Uniform Stock Transfer Act had not been adopted in California (St.Cal.1931, p. 1790). It, therefore, can have no application here, even though it may have been in force in the state of the declaring corporations' incorporation, for the rule is that the law of the place of transfer governs, Mylander v. Page, 162 Md. 255, 159 A. 770, 773, or that both the state of incorporation and the state where the transfer is made have adopted the act, Lavien v. Norman, 55 F.(2d) 91, 97 (C.C.A.1).

It does not seem fair that the taxpayers should be permitted to escape or evade taxation in the manner described, but the problem of preventing such a result is for the Legislature, not the courts.

Affirmed.

HANEY, Circuit Judge (dissenting).

Respondent reported her income on a cash basis. The stock dividend should have been declared in the return for the year in which she received it. She "received" the stock dividend when it was made "unqualifiedly" subject to her demand. Treasury Regulations 74, art. 333.

As was said in Avery v. Commissioner, 292 U.S. 210, 214, 54 S.Ct. 674, 676, 78 L.Ed. 1216: "When a dividend unqualifiedly becomes subject to a taxpayer's demand is essentially a question of fact."

The Board found that the stock dividend was received by respondent in 1928. This finding must be sustained if there is any substantial evidence to support it. Helvering v. Rankin, 295 U.S. 123, 55 S. Ct. 732, 79 L.Ed. 1343; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L. Ed. 665; Phillips v. Commissioner, 283 U. S. 589, 51 S.Ct. 608, 75 L.Ed. 1289.

I am unable to find any evidence to support the finding, and therefore dissent.

The resolutions did not convey the stock. The wording indicates that it would be transferred at some future time. That no conveyances were made by the resolutions is conclusively shown by the fact that the stock was to be distributed to the stockholders who were shown as such on the records nearly a month and a half later. There could be no conveyance without some one to whom it could be made. The resolutions merely gave authority to convey the stock at some future time.

The book entries, of course, conveyed nothing.

The cash dividend indicates nothing other than that the books of the Bank of America N. A. showed that respondent was the owner of stock in the bank. However, the record owner may be entirely different from the actual owner.

The stipulated facts disclose no other evidence tending to show a conveyance, and therefore the finding should not be sustained.

It is quite possible that the evidence might show that respondent received the stock in 1928, but, other than the stipulated facts, there is nothing to show it. It seems to me that the determining factor, in the absence of a conveyance, is when the corporation divested itself of control over the stock. It might have divested itself of control upon assignment of the certificates and delivery to the transfer agent. The facts do not show whether the corporations did or did not assign the certificates. It might have divested itself of control over the stock upon delivery of the new certificates to the trustee, or the evidence might show that corporations were not divested of their control over the certificates until the actual certificates were physically received by the stockholders. Since there is no evidence concerning any of these particulars, I believe the finding of the Board is unsupported by the evidence, and that the decision of the Board should be reversed.