WILLIAM R. HOPKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91753. Promulgated May 29, 1940.

*Ashley M. Van Duzer, Esq.*, and *George P. Bickford, Esq.*, for the petitioner.

*W. W. Kerr, Esq.*, for the respondent.

1294

OPINION.

VAN FOSSAN: The theory underlying respondent's determination that petitioner received a capital gain in 1933 is not made clear in the notice of deficiency and was not clarified at the hearing or on brief.

In his brief respondent sums up his position thus: "On the whole record herein, respondent respectfully submits that this petitioner, after deducting cost of the 570 shares of Buckeye stock, together with taxes and all other charges against the dividends on such stock, is enriched to the extent of $111,953.24, as found by the respondent, upon which he has never personally paid one penny of Federal income taxes." He argues at length about the irregularity of the procedure by which Griffiths returned the dividends and paid the taxes in his own returns. In reply to this petitioner contends that the contract of sale gave title to the stock to petitioner in 1920; that possession was withheld only because payment was to be made out of dividends; that full payment was completed by 1926; that dividends were at all times received for petitioner's account; that the taxes were paid by Griffiths out of money arising from the dividends which belonged to petitioner.

As we view it, the real issue is beclouded by these collateral facts. It must be borne in mind that only the year 1933 is before us. Respondent held that income arose in that year by reason of the court decree and the consequent accounting. He is not charging fraud nor attempting to charge petitioner with income in the prior years. If no income arose in 1933, that is an end of the matter here involved.

The determination of this question turns on the ownership of the Buckeye stock and the dividends. If petitioner owned this stock from 1920 and the dividends were paid for his account as they accrued, there being no sale or exchange, the dividends were not income in 1933 when, in their then present form, they were accounted for pursuant to the court decree. This being true, it matters not that through a misconception of his duty and an unwarranted assumption as to his rights in the premises, the taxes on the dividends were paid as though his own by Griffiths. True, it seems utterly incredible that any lawyer, much less one of the age and experience of petitioner, should have believed that Griffiths could legally return as though it were his own that part of petitioner's income arising from the dividends on the Buckeye stock. But such is petitioner's testimony. Here, however, that fact is not controlling. As observed above, the Government makes no charge of fraud and does not claim deficiencies for those earlier years. Cf. *T. G. Nicholson*, 38 B. T. A. 190.

That petitioner acquired the Buckeye stock in 1920 is stated as a premise and therefore conceded by respondent in the notice of deficiency. That this is correct is apparent upon an examination of the facts. The agreement of August 16, 1920, was an executed,

and not merely an executory, contract. It recites that the Griffiths "have purchased for the benefit of" petitioner and "have caused said shares to be put into the name of" the Trust Co. This is confirmed by the decree in petitioner's suit for accounting, wherein the court found that on August 16, 1920, the Griffiths "did purchase for the benefit of the plaintiff" the 570 shares, and retained "constructive possession" by placing them in trust. The retained possession, the court said, was "as security against moneys advanced." Consequently, in view of the provisions of the contract, and its construction by the Ohio court, it must be held that the petitioner was the owner of the shares from and after August 16, 1920. *Erie Railroad Co. v. Tompkins*, 309 U. S. 64. The decree does not purport to make the petitioner the owner of the shares from the time of the decree, but on the contrary, confirms his ownership from August 16, 1920.

Since petitioner was at all times the owner of the stock, we pass to the question of the dividends.

Under the statute, income is taxable to one on the cash basis in the year when received. Such is the general rule. Sec. 42, Revenue Act of 1932; art. 331, Regulations 77. However, physical receipt by the taxpayer is not always necessary in order to sustain an application of the rule. There may be receipt by an agent, which is regarded as receipt by the principal, *Maryland Casualty Co. v. United States*, 251 U. S. 342; there may be constructive receipt, *John A. Brander*, 3 B. T. A. 231; *Ella C. Loose, Executrix*, 15 B. T. A. 169. As to dividends, "there are different times at which it reasonably may be claimed the taxpayer receives them." *Avery v. Commissioner*, 292 U. S. 210. Dividends on stock in trust received by the trustee and used by it to discharge debts of the owner are income to the owner. *Lucy A. Blumenthal*, 30 B. T. A. 591; affd., 296 U. S. 552.

Beginning in 1921, and from then until in 1932, distributions were made on the Buckeye stock. These distributions were received by the Guardian Trust Co., not as owner, nor for the Griffiths, but for the petitioner as the equitable owner; a fact confirmed by the decree later rendered. The trustee can not, in our opinion, be regarded as trustee for the petitioner as he had never appointed it to act in that capacity. If it were to be said that the contract of August 16, 1920, made the Trust Co. a trustee for the petitioner, then the Trust Co. was under the duty of filing returns and reporting the distributions as they occurred, and its failure to do so can not now be charged to the petitioner. A careful appraisal of the facts convinces us that, as the decree of the Ohio court holds, constructive possession of the

stock was retained by the Griffiths as security for the petitioner's debts. The Griffiths and Guardian were thus nothing more nor less than agents of the petitioner to collect the income from the Buckeye stock and apply it as far as necessary to the discharge of the petitioner's obligations. Receipt by the agents was receipt by the petitioner, and that receipt occurred prior to 1933.

The decree of the court in 1933 did not create income. It merely declared ownership of the Buckeye stock in 1920 and required an accounting of the proceeds and avails of such stock. The income on the stock followed its ownership and receipt occurred in the preceding years. This is true of the cash as well as the other items comprised in the accounting. The decree did not cause conversion of assets into cash or make the cash income in 1933.

Respondent's position, as above indicated, is primarily based on the ground of untaxed enrichment. If equitable consideration were to be taken into account, we could not fail to note that, though the action by Griffiths in reporting the dividends was entirely without legal sanction and wholly irregular, by reason of the fact that Griffiths' personal income was much greater than that of Hopkins the Government probably was paid an amount of tax on account of the dividends much in excess of what it would have received had petitioner returned them properly and paid the tax in due course.

Petitioner admittedly permitted some of his income to be returned and taxes paid by another. The statute of limitations prevents adjustment of the situation as to the years of actual receipt of income. This fact, however, does not justify the approval of a deficiency as to 1933 if no income was then received.

The respondent seeks to fortify his position by citing various cases which hold that income received as the result of litigation is subject to taxation in the year in which the litigation is terminated. However, in the case at bar we note that the action brought by the petitioner was for the purpose of compelling the return of property already owned, not for the adjudication of a claim. As above indicated, the suit was a simple proceeding against Guardian for an accounting and to repossess property unlawfully withheld from the petitioner by that company. Thus, the cases relied on by the respondent are clearly distinguishable on facts.

We conclude that no income was received by petitioner in 1933 as a result of the decree of the Ohio court, nor was there any capital gain.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MELLOTT dissents.