## COMMISSIONER OF INTERNAL REVENUE v. KAUFMANN et al.

### No. 8198.

Circuit Court of Appeals, Third Circuit.
Argued May 3, 1943.
Decided July 30, 1943.

Bernard Chertcoff, of Washington, D. C. (Samuel O. Clark Jr., Asst. Atty. Gen., and Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Howe P. Cochran, of Washington, D. C. (Margaret F. Luers, of Washington, D. C., on the brief), for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

E. M. Rosenthal Jewelry Co., a corporation of the District of Columbia, owned in 1933 a majority of the shares of numerous corporations operating retail jewelry stores. For business reasons it was deemed expedient for Rosenthal to divest itself of the ownership of those shares. In 1933 a plan was devised which it was thought would accomplish this without the incurring of any income tax liability.

In 1933 the shareholders of Rosenthal organized a Delaware corporation, General Associates, Incorporated. Rosenthal by a writing dated August 3, 1933, stated that it thereby sold the stock of the retail corporations and certain notes to the Delaware corporation in consideration of 1500 shares of the latter's stock and $19,-892.29 cash. On August 10, 1933, Rosenthal's directors adopted a resolution authorizing the payment of a dividend to its stockholders consisting of the stock of the Delaware corporation.[1]

The Delaware corporation did not issue certificates for any shares of its stock

---

[1] There are two resolutions in the records. We do not know why. They read:

"*Resolved*, that this corporation pay to its stockholders of record, on August 15,

until March 31, 1934. Then, it issued a certificate for 1500 shares to Rosenthal, antedated August 10, 1933. Rosenthal, on March 31, 1934, assigned the certificate to its shareholders, antedating the assignment March 1, 1934. On March 31, Rosenthal also transmitted to the retail corporations their certificates so that they would issue new ones in the name of the Delaware corporation. Certificates for the shares of the Delaware corporation antedated March 1, 1934, were delivered on March 31, 1934, to the Rosenthal shareholders. There had been no direction by the person empowered to assign the shares of the retail corporations and to issue the shares of the Delaware corporation to effect these transactions until 1934. Nor were any books opened for the Delaware corporation until January of that year.

The taxpayer, a shareholder of the Rosenthal corporation who was on a cash receipts basis, did not include any amount on account of the receipt of the shares either in his 1933 or 1934 return. Nor did the other shareholders. The Commissioner determined that the shares of the Delaware corporation were income to Rosenthal's shareholders in 1934, and accordingly, assessed deficiencies for that year. The Board of Tax Appeals placed the transaction in 1933 and the Commissioner appealed the cases involving the various taxpayers concerned to the Fourth and Seventh Circuits and to this Court. The Fourth Circuit ruled against the Commissioner in Helvering v. Kaufmann, 1943, 136 F.2d 356, and the Seventh in his favor in Commissioner of Internal Revenue v. Levi, 1943, 136 F.2d 366. Each decision has had cheers from one side in the argument before us.

Section 115(a) of the Revenue Acts of 1932 and 1934 [2] defines a dividend as any distribution, whether in money or other property, made by a corporation to its shareholders out of earnings or profits accumulated after February 28, 1913. The distribution here comes within that definition whether we decide it was made in 1933 or 1934. The difference the year of distribution makes to the taxpayer is that if it is 1933, he can claim that the gain, if any, was not taxable under § 112(g) of the Act of 1932,[3] a provision eliminated from the Act of 1934. The taxpayer's 1933 tax is not involved in this litigation. Our sole question is whether the facts above stated give rise to a transaction taxable in 1934.

The statute requires that all items of gross income are to be included in the gross income for the taxable year in which received by the taxpayer. Section 42 of the Revenue Acts of 1932 and 1934.[4] The regulations promulgated by the Commissioner have amplified its meaning as applied to corporate dividends. Dividends are taxable when unqualifiedly made subject to the demand of the shareholder. Treas. Reg. 77, Art. 333 and Art. 621, under Revenue Act of 1932. As applied to cash dividends similar provisions have been construed to make the dividend taxable in the year when the shareholder received it, whether on a cash basis as in Avery v. Commissioner of Internal Revenue, 1934, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216, or an accrual basis as in Tar Products Corporation v. Commissioner of Internal Revenue, 3 Cir., 1942, 130 F.2d 866, 143 A.L.R. 593. Concerning dividends paid in the stock of another corporation there is a further explanatory regulation. The income is taxable at the time the dividend becomes "payable" within the meaning of Article 333, the stock to be distributed having been set aside and notice given to the shareholders. Treas. Reg. 77, Art. 627.

We do not think that the critical events contemplated by the statute and regulations as necessary to render a stock dividend taxable took place until 1934. Under the facts presented we need not

---

1934 * a special stock dividend of the stock of General Associates, Incorporated, to be paid the Stockholders of E. M. Rosenthal Jewelry Company, in the same proportion of the stock held by said Stockholders in the said E. M. Rosenthal Jewelry Company."

"*Resolved* that a stock dividend or distribution of the shares of stock held by the Company in the General Associates, Inc., a wholly owned subsidiary, be made pro-rata to the stockholders of record on this day, August 15, 1933, in accordance with a plan of reorganization to separate the investment function of the Company so that it may confine its activities to merchandising, trading, and functions attending thereto."

[2] 26 U.S.C.A. Int.Rev.Acts, pages 520 and 703.

[3] 26 U.S.C.A. Int.Rev.Acts, page 513.

[4] 26 U.S.C.A. Int.Rev.Acts, pages 496 and 679.

* Typewritten 4, pencilled 3.

determine whether the shareholder must actually have received the certificate for the stock dividend. Cf. the Avery and Tar Products cases, supra. Nor need we concern ourselves with the situation where a corporation never issues share certificates to its shareholders, for those are obviously not the facts of this case. The corporations involved conducted the transactions in the usual corporate manner and corporate acts which are determinative of tax liability are certainly not to be disregarded any more than those indicative of non-liability. The resolutions declaring the dividends are important for the Court's consideration; so also are corporate acts that followed.

A mere review of the significant events in 1933 and those in 1934 conclusively shows, we think, that what was done in 1933 was not sufficient to make the stock dividend one "received", "unqualifiedly made subject to the demand" or "set aside" and "payable" in that year. What happened in 1933 was the bare organization of the Delaware corporation, the agreement for the transfer of the stock of the retail corporations to it, and the resolution authorizing the dividends. These facts doubtless resulted in the vesting of contractual rights in the Delaware corporation, Rosenthal and its shareholders. It may be assumed that the taxpayer in 1933 became entitled to receive shares in the Delaware corporation just as the shareholders upon the declaration of cash dividends became creditors of the corporation in the Avery and Tar Products cases. That legal incident, however, is not any more determinative of the time when the dividend became taxable income, than it was in the cases cited. Here the fulfillment of that expectancy was as a matter of fact dependent upon events which did not occur until 1934. Rosenthal did not relinquish possession of the shares of the retail corporations for issuance of new certificates in the name of the Delaware corporation until that year and continued till then to receive dividends thereon. Those shares were the consideration for the shares the taxpayer was to receive. The Delaware corporation first opened books in 1934 and only then entered as a liability the cash consideration it was to pay for the shares it was to receive from Rosenthal. Certificates representing the Delaware corporation's shares were issued for the first time in 1934 to Rosenthal. Not until then did the latter assign those shares to the taxpayer who finally received certificates in his own name from the Delaware corporation.

The taxpayer points out that one may be a shareholder in a corporation without ever receiving a certificate, citing Pacific National Bank v. Eaton, 1891, 141 U.S. 227, 11 S.Ct. 984, 35 L.Ed. 702. That is beside the point here. The issuance of a certificate to the taxpayer was not the sole particular which was lacking in 1933 to render his dividend one received in that year within the meaning of the taxing statute. An entire plan of corporate reorganization had to be carried out and exchanges and transfers of corporate shares made and in 1933 only the groundwork had been laid. The issuance to taxpayer of his certificate was but the last step of the plan, and that step as well as a good number of the preceding ones were not effected until 1934.

The proprietary rights which a shareholder acquires upon the declaration of a cash dividend are like those he obtains when the dividend is payable in stock. The equivalency in treatment accorded cash and stock when the time of receipt of income is in issue has been noted. Magill, Taxable Income (1936) pp. 157 et seq.; Ramapo, Inc. v. Commissioner of Internal Revenue, 2 Cir., 1936, 84 F.2d 986. There is no basis here for a distinction in the tax effect of a mere declaration of a dividend in property rather than in cash. That a distribution forthwith was intended is immaterial if the intent was not effected by corporate action.

Reversed.