Henry H. BONSALL, Jr., and Martha G. Bonsall, C. Jordan Vail and Nancy B. Vail, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 264, 265, Dockets 27923, 27924.

United States Court of Appeals Second Circuit.

Argued April 18, 1963.

Decided May 6, 1963.

Eugene J. Steiner, Albany, N. Y. (A. Rita Chandellier, Schenectady, N. Y., on the brief), for petitioners.

L. W. Post, Attorney, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attorneys, Dept. of Justice, on the brief), for respondent.

Before SMITH, KAUFMAN and MARSHALL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Albany Linoleum & Carpet Company was organized in 1924 and since that time has engaged in the wholesale distribution of various floor covering materials. Its largest supplier has been Armstrong Cork Company. Henry and Martha Bonsall, husband and wife, have at all pertinent dates been the controlling shareholders and principal officers of Albany Linoleum. C. Jordan Vail and his wife Nancy were minority shareholders, and he was an employee of the company. Albany Linoleum acquired its principal place of business at 64 Northern Boulevard in Albany, New York, in 1945, at a cost of roughly $75,000. The gross usable floor area of this building was 40,200 square feet. At the same time, it acquired a small adjoining building located at 231 Elk Street. The gross usable floor area of these premises was 3,312 square feet. From 1946 to 1956 Albany Linoleum leased 2,770 square feet of its Northern Boulevard building to Armstrong Cork Company. From 1949

to 1954 the Elk Street building was leased to Albany Poultry Company. Rental income in comparison to corporate income as a whole can be summarized as follows:

| Year | Gross profit from sales | Gross rental income | Net income |
|------|------------------------|---------------------|------------|
| 1952 ............... | $318,650.55 | $1,710.00 | $40,955.17 |
| 1953 ............... | 333,118.52 | 1,350.00 | 43,309.75 |
| 1954 ............... | 322,412.45 | 1,158.00 | 32,865.77 |
| 1955 ............... | 351,479.74 | 1,054.00 | 36,853.84 |
| 1956 ............... | 388,890.81 | 628.00* | 38,951.81 |

In 1956 it was decided to tear down the Elk Street building and put up an addition to the Northern Boulevard property. To raise construction funds and pay off the current mortgage, a new mortgage was financed through the Albany Savings Bank for $90,000. The bank required that a new corporation be formed to take title to the property with Albany Linoleum as tenant, as a condition to making the loan, and that the lease rentals be assigned by that new corporation to the bank as collateral for the loan. In compliance with this requirement, the shareholders of Albany Linoleum voted to form Abon, Inc. to acquire its buildings on Northern Boulevard and Elk Street. The certificate of incorporation was filed with the Secretary of State of New York on July 27, 1956, providing for 1,500 shares of stock at $100 par value. On August 2, 1956 a meeting was held at which Bonsall and his wife and three others were elected directors, and Vail, Bonsall's son, and one Jones were elected as officers. It was then resolved to accept an offer from Albany Linoleum to convey the properties to Abon in return for assumption of an existing mortgage of $54,000, obligations pursuant to the building of the addition, and issuance of its stock to the Albany Linoleum shareholders, one share for every twenty shares of Albany Linoleum stock owned. Bonsall and his wife each owned 9,300 shares of Albany Linoleum stock, entitling them to 466 shares each of Abon stock; Vail and his wife owned a total of 700 shares of Albany Linoleum

stock, entitling them to 35 shares of Abon stock.

A meeting of Abon stockholders was held on September 12, 1956 at which the prior acts of the incorporators and directors were ratified. Vail, Bonsall, and Bonsall's wife signed the minute book of this meeting. Mr. and Mrs. Bonsall also executed a written waiver of notice. The next day, title to the properties at 64 Northern Boulevard and 231 Elk Street was conveyed to Abon and accepted by its directors, and a lease of the premises was executed between Abon and Albany Linoleum. Abon then drew a mortgage loan of $90,000 from Albany Savings Bank, and assigned its future rentals due as collateral, pursuant to the prior agreement. The fair market value of net assets transferred to Abon was $9,707.87 or $7.96 per share, computed on the basis of 1219 shares required to be issued under the agreement with Albany Linoleum. A special meeting of shareholders, held February 20, 1957, attempted to rectify the patent illegality of issuing $100 par shares for this consideration by amending the certificate of incorporation to increase capital stock to 150,000 shares and decrease par value to $1 per share. Waivers of notice to shareholders for this meeting were executed by Mr. and Mrs. Bonsall and by Vail. A certificate of amendment executed February 26 was filed April 2, 1957, in which the original subscribers stated that they were the only subscribers, that no stock had been issued, and that no officers had been elec-

* Through August 31, 1956 only.

ted. However, a stock ledger for Abon had apparently existed from the previous September containing entries showing Henry Bonsall, Jr. and his wife to be owners of 466 shares each of Abon stock, C. Jordan Vail to own 380 shares and his wife Nancy 405—and the date that each of them became owner of these shares to be September 12, 1956. The first stock certificates were executed, representing the $1 par shares on April 5, in the amounts listed in the stock ledger.

Abon filed a corporate income tax return for 1956 reporting an entry for common stock of $1,219 on March 15, 1957. Albany Linoleum's balance sheet as of December 31, 1956 showed no stock or other ownership in Abon but did reflect decreases in land and buildings and other fixed depreciable assets. Bonsall and his wife and Vail and his wife did not report any Abon stock received from Albany Linoleum as a dividend for 1956 on their returns for that year. The Commissioner of Internal Revenue asserted that Bonsall and his wife received an added $7,-418.72 in dividend income—the value of the Abon stock—and determined an income tax deficiency of $4,027.91. Vail and his wife were likewise found to have failed to report $278.60 in dividend income with a resulting deficiency of $50.-25. Petitioners argued in the Tax Court that no distribution of Abon stock was made to them until 1957, and even if made in 1956, that it was tax-free within the Internal Revenue Code of 1954, § 355. The Tax Court rejected these contentions and sustained the deficiencies. Taxpayers petition to review that decision. We affirm.

 It is clear that the fact that no stock certificates were issued until 1957 does not conclude the question whether petitioners did or did not actually become shareholders in 1956. The certificate is merely evidence of ownership, which is an independently existing fact to be determined by inquiry into the nature of the transaction as a whole. Richardson

v. Shaw, 209 U.S. 365, 378, 28 S.Ct. 512, 52 L.Ed. 835 (1908); Pacific Nat'l Bank v. Eaton, 141 U.S. 227, 11 S.Ct. 984, 35 L.Ed. 702 (1891); Swenson v. Commissioner, 309 F.2d 672 (8 Cir., 1962); Hoffman v. Commissioner, 71 F.2d 929 (2 Cir., 1934); W. F. Marsh, 12 T.C. 1083 (1949); Flour City Nat'l Bank v. Shire, 88 App.Div. 401, 84 N.Y.S. 810 (4th Dep't 1903), aff'd mem. 179 N.Y. 587, 72 N.E. 1141 (1904); Beals v. Buffalo Expanded Metal Const. Co., 49 App.Div. 589, 63 N.Y.S. 635 (4th Dep't 1900). In support of the Tax Court decision is evidence of practically every type which the above-cited cases have found relevant in ascertaining ownership of stock. The consideration for the shares—the transfer of realty—was paid to Abon in 1956. It was the plain understanding of the parties in 1956 that they were shareholders, as witnessed by their conduct of shareholder's meetings and execution of shareholder's waivers of notice. The stock ledger indicated that they had become owners of stock in 1956, and it is made "presumptive evidence of the facts therein" by New York Stock Corporation Law, § 10, McKinney's Consol. Laws, c. 59.[1] Petitioners offer little factual rebuttal beyond the issuance of certificates in 1957. Thus, there is ample evidence to support the finding of fact made by the Tax Court that the stock was issued in 1956.

 Cases such as Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216 (1934), cited by the petitioners, are inapposite. These hold that a dividend is not income until unqualifiedly subject to the shareholder's demand. The dividend here was not merely subject to demand, but had already been paid. Petitioners again confuse the execution of stock certificates with the declaration of a stock dividend. There is nothing in New York Stock Corporation Law, § 69, prohibiting issuance of stock "except for money, labor done or property actually received" to prevent this conclusion.

---

1. It is true that the additional stock represented was not purchased by the Vails until 1957, indicating that entries were

probably made then, but these entries are further evidence of the capacity in which petitioners regarded themselves.

The Abon stock may have been watered, in that it was issued for consideration less than its par value, but it was not void. It was still stock. See Kimmel Sales Corp. v. Lauster, 167 Misc. 514, 4 N.Y.S.2d 88 (Sup.Ct.1938). Other provisions of New York law to which petitioners call our attention are not relevant in this context.

The petitioners assert that even if the stock was transferred to them in 1956 it is not taxable as a dividend because of the effect of Internal Revenue Code of 1954 § 355. (It should be noted that they concede that the distribution was made to them by Albany Linoleum even though it never actually owned the stock.) That section provides, as relevant here, that if a corporation distributes to a shareholder with respect to his stock, stock of a corporation which it controls immediately prior to the distribution and (1) the transaction was not used primarily as a device for distributing the earnings and profits of either corporation, (2) the requirements of subsection (b) relating to the active conduct of businesses are satisfied, and (3) at least a controlling percentage (as defined) of the stock of the subsidiary is distributed, then no gain or loss shall be recognized to the shareholder on receipt of the stock. The requirements of subsection (b) are, in part, that the distributing corporation and the subsidiary corporation both be engaged in the "active conduct of a trade or business" immediately after the distribution. A corporation can be so regarded only if "such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution." Other limitations are set down that are not applicable here. The Tax Court found that Albany Linoleum had not been engaged in the active conduct of a real-estate rental business for five years prior to the distribution and therefore that Abon was not engaged in the active conduct of a trade or business within the meaning of the statute.

There is ample support for the factual determination that Albany Linoleum was not actively conducting a real-estate rental business. As the table above indicates, the portion of its income realized from real estate rentals was minute. There was testimony by Bonsall himself tending to negate active efforts at promoting rentals: the buildings had never been listed with an agent, nor were there even signs on them indicating that space was available. No activity appeared beyond a few casual conversations with prospective tenants. Moreover, most of the floor-space of the two buildings combined was occupied by the floor-covering business. Only a very small part was available for rental, and an even smaller part actually leased. The continuing rental to Armstrong Cork Co. which provided most of the rental income appeared to be an accommodation to a large supplier of the floor-covering business and thus an adjunct to it, rather than indicative of an independent business, for the Tax Court found that the premises were let at less than fair rental value over the five-year period. Finally, no separate records of rental income and expenses were kept. Absence of such records is at least probative of the fact that the managers of Albany Linoleum did not regard it as engaged in an independent rental business. The Tax Court was plainly justified in concluding that the small amount of rental activity was merely an incidental part of the sole business of the corporation—wholesale floor-coverings. See Theodore F. Appleby, 35 T.C. 755 (1961), aff'd per curiam, Appleby v. C.I.R., 296 F.2d 925 (3 Cir.), cert. denied 370 U.S. 910, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962); Isabel A. Elliott, 32 T.C. 283 (1959).

Petitioners argue in reply that even if Albany Linoleum is found to have been conducting but one business, the recent decision of the Tax Court in Edmund P. Coady, 33 T.C. 771 (1960), aff'd per curiam, C. I. R. v. Coady, 289 F.2d 490 (6 Cir., 1961), permits the tax-free division of that business as has been done in this case. This is to misconceive the scope of that decision. Coady only decided that the division of a single business into two operating halves, each continuing the

previous activity (which had been carried on for more than five years) could fall within § 355, invalidating the Regulation that stated that the section did not apply to division of a single business as unauthorized by the statute. See Regs. § 1.-355—1(a). Each corporation was engaged in the "active conduct of a trade or business" within the statute because it could be traced back through five years or more of the same activity, whether it was an old or new corporate entity. That is not true here. As the Tax Court properly found no prior real estate rental business, Abon must be taken to have embarked on a wholly new venture when it was formed. It is lacking the five-year history that the statute requires for "active conduct of a trade or business".

It is clear that careful scrutiny of purported "real-estate rental" businesses is necessary to prevent evasion of the purposes of the statute. The possibility of the shareholders abstracting accumulated earnings at capital gains rates is present whenever a corporation owns its own factory or office building. Under taxpayers' interpretation, all that need be done is to transfer the building to a new corporation and distribute the stock received in return. The shareholders would then be free to sell their stock and pay a capital gains rate on the proceeds while the corporation can rent or purchase another building and reduce its accumulated earnings. The present case is little more than that, and it is noteworthy that the two prior cases decided under this section other than Coady, Theodore F. Appleby, supra, and Isabel A. Elliott, supra, were likewise factually similar. Only long application may completely clarify the difficult terminology of section 355. But obvious cases such as presented here plainly must be excluded from tax-free treatment.

The Commissioner also urged before the Tax Court that the transaction was disqualified from tax-free treatment by the express provision of section 355(a)(1)(B) as it was "used principally as a device for the distribution of the earnings and profits of the distributing cor-poration." As the Tax Court found it unnecessary to pass on this point, the Commissioner argued in this Court that a remand for further findings should be made if his contention that there was no active rental business were not sustained. In view of our disposition of the case, we need not pass on this question. It should be noted, however, that there was no valid shareholder business purpose for the distribution of the Abon shares. The reasons for the creation of Abon were adequate, but no necessity for the distribution of its stock was shown. See Parshelsky's Estate v. Commissioner, 303 F. 2d 14 (2 Cir., 1962).

The distribution of Abon stock to Albany Linoleum shareholders was taxable as a dividend in 1956. It being undisputed that Albany Linoleum had earnings and profits on December 31, 1956 far in excess of the fair market value of the stock, the dividend is properly taxable at ordinary income rates. See Internal Revenue Code of 1954, §§ 301, 316.

The decision of the Tax Court is affirmed.