ELVIRA SCATENA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63920. Promulgated May 29, 1935.

*Myrtile Cerf, C. P. A.,* for the petitioner.
*George D. Brabson, Esq.,* for the respondent.

## OPINION.

MORRIS: The first question pertains to whether or not the aggregate value of the 175 shares of stock of the Bank of America National Association received by the petitioner, as dividends, from Bancitaly Corporation and National Bankitaly Co. is taxable within the period under consideration, 1929, as the respondent has determined and as he here contends. The respondent relies upon the following provisions of the Revenue Act of 1928 and the articles of Regulations 74 promulgated by him pursuant thereto:

SEC. 115. (a) *Definition of dividend.*—The term "dividend" when used in this title (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

SEC. 42. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period.

ART. 621. * * * A taxable distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands.

The essential facts are that two corporations in which the petitioner owned stock declared dividends in Bank of America shares in September 1928; recognized the dividend as a liability on their books as of October 31, 1928, and delivered the shares to the transfer agent on November 1, together with a list of the shareholders and the exact number due each, and directed that certificates be made out accordingly. During November, December, and January the transfer agent delivered the new certificates to the trust department of the Bank of Italy National Trust & Savings Associations for delivery to the shareholders. One hundred and sixty-nine of the petitioner's shares were prepared and registered by the transfer agent on or before December 5, 1928; six additional shares were issued in petitioner's name in January 1929 after she had completed payment for the stock to which said shares related.

The respondent's position is that the dividends are taxable for the year 1929 when actual physical delivery of the certificates was made to the petitioner. His argument ignores the vital distinction between the ownership of an interest in a corporate enterprise and the certificates which are a mere evidence of that ownership. " A certificate is authentic evidence of title to stock; but it is not the stock itself, nor is it necessary to the existence of the stock. It certifies to a fact which exists independently of itself." *Pacific National Bank* v. *Eaton*, 141 U. S. 227. Ownership of stock is not affected by the shareholder's failure to be in physical possession of a certificate. In *Snyder* v. *Commissioner*, 73 Fed. (2d) 5, affirming 29 B. T. A. 39, the court said:

* * * A stockholder may prove his ownership of shares by evidence other than that of the certificate. * * * The shares may go in one direction and the certificate in another * * *. Then " ownership follows the owner, and not the certificates." *Howbert* v. *Penrose*, 38 Fed. (2) 577, 579. * * *

From these observations, abundantly sustained by decisions, it is plain that the petitioner in this case owned shares of U. G. I. stock, though neither he nor his brokers ever held certificates for them in his name * * *.

A similar view was expressed in *Hoffman* v. *Commissioner*, 71 Fed. (2d) 929, reversing in part 28 B. T. A. 1264: " But the law is well settled that non-delivery of possession [of certificates] would not preclude title to the stock passing forthwith. * * * * "

In *Minal E. Young, Executor*, 6 B. T. A. 472, the Board considered the same question on similar facts. In that case a resolution was passed by the corporation in 1918 declaring a dividend of certain stock owned by it in another corporation and held by voting trustees under a voting trust agreement. We held in that case that, notwithstanding there was no actual delivery of the certificates during the

year 1918, the stockholders were nevertheless the recipients of income in that year and not in the year 1919. In support of the conclusion reached, we said:

Under the resolution of March 11, 1918, the taxpayers became the owners of their proportionate part of the voting trust certificate for the stock of the Salt Creek Producers Association, Inc., owned by the New York Oil Co. The resolution provided that the certificates of stock of the Salt Creek Producers Association, Inc., would be issued to the stockholders of the New York Oil Co. upon the surrender of their old certificates in the New York Oil Co. to be exchanged for new certificates of reduced par value. This, in our opinion, related merely to the receipt of the certificates representing the stock which became theirs by virtue of the resolution of March 11. While it may be true that a division or distribution by a corporation is not taxable to a stockholder who is on the cash receipts and disbursements basis until the amount of the distribution is made available to him, this does not mean that, when stock of one corporation is distributed by another, the certificate itself must actually be received before there can be taxable gain. Since a person may be a stockholder in a corporation without ever having received a stock certificate, the time of the actual receipt of the stock certificate is immaterial. The question is, when did the taxpayers become the beneficial owners of the stock of the Salt Creek Producers Association, Inc.? We think they became the owners thereof in 1918 by virtue of the resolution distributing the stock.

From the foregoing decisions it is clear the dividends were income in 1928, as the petitioner had received the stock although she did not have the paper evidence. The fact that the certificates were not delivered directly from the transfer agent to the stockholders does not indicate the retention of any right by the issuing corporations. On the contrary, the corporation's books, their surrender of the certificates, the notice of the stock exchange, the shareholders' unchallenged right to the December cash dividends, and the receipt by the trustee of the certificates for delivery to the registered owners are indicative that neither corporation retained any interest in the dividend shares after October 1928. The petitioner, as the registered holder, had herself received right, title, and interest thereto in 1928 and was enjoying the fruits of ownership.

It is in this respect that the conclusion herein reached is clearly not in conflict with *Avery* v. *Commissioner*, 292 U. S. 210. In that case the Court held that a cash dividend payable on or before December 31, represented by a check dated and mailed on that day, but not received until January, constituted income in January. The distinguishing factors are apparent from the Court's language:

It was the practice of the company to pay all dividends by checks not intended to reach stockholders until the first business day of January; there is nothing to show that petitioner could have obtained payment on December 31st, he did not expect this, and the practice shows the company had no intention to make actual payment on that day. Nothing indicates that it recog-

nized an unrestricted right of stockholders to demand payment except through checks sent out in the usual way. The checks did not constitute payments prior to their actual receipt. The mere promise or obligation of the corporation to pay on a given date was not enough to subject to petitioner's unqualified demand "cash or other property"; and none of the parties understood that it was.

The taxpayer's gain was represented by the check and until it was in his hands he had received nothing. In the instant proceeding the receipt of the stock certificates added nothing to that which the petitioner already had, namely, title and all the benefits of ownership which had been acquired in the preceding year.

The respondent added $33,862.50 to the petitioner's income for 1929, representing the value of 175 shares of Bank of America National Association received as a dividend. Six of these shares were not placed in the petitioner's name until January 24, 1929, after she finished paying for the stock upon which these shares were declared. Although the parties stipulated that the petitioner, on November 1, 1928, was the legal and equitable owner of the stock from which she received the six shares, it may be inferred from the stipulation that these six shares were intentionally withheld until final payment and that the petitioner had no right to them until that time. In effect the respondent has so determined, and we should not, therefore, disturb his determination to the extent of the value of the six shares.

The respondent argues, but does not affirmatively plead in his answer, that, because he advised the petitioner that these dividends should be reported as income for the taxable year 1929, which she failed and refused to do, and because of the fact that the statute of limitations now bars the satisfaction of a deficiency upon said dividends in the year 1928, the petitioner is now estopped to deny their taxability in 1929. Estoppel in order to be availed of must be pleaded and proved and the failure to do so is fatal. *Bamberg Cotton Mills Co.*, 8 B. T. A. 1236, citing *In re Stoddard Bros. Lumber Co.*, 169 Fed. 190.

The respondent concedes that the second issue falls within the principle of *T. I. Hare Powel*, 27 B. T. A. 55, and *James A. Connelly*, 30 B. T. A. 331. Therefore, upon that issue the petitioner will be sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

ARUNDELL, dissenting: I think this case comes within the principle of *Avery* v. *Commissioner*, 292 U. S. 210, and the stock was taxable as a dividend when received in 1929. In that case the corporation

declared dividends in November 1924 and November 1929, payable on or before December 31 of the respective years. The dividend checks were prepared in 1924 and 1929 but held in the treasurer's office in each case until the first business day of the following year, and then distributed through the office mail. The Court said in part:

If we give the words of the statutes their ordinary meaning, clearly the dividends under consideration were not actually received by the taxpayer during 1924 and 1929. Certainly they were not received when declared. They did not come into the taxpayer's hands on December 31st simply because payable on that day. And, unless Congress has definitely indicated an intention that the words should be construed otherwise, we must apply them according to their usual acceptation.

\*        \*        \*        \*        \*        \*        \*

\* \* \* Nothing indicates that it [the corporation] recognized an unrestricted right of stockholders to demand payment except through checks sent out in the usual way. *The checks did not constitute payments prior to their actual receipt. The mere promise to pay on a given date was not enough to subject to petitioner's unqualified demand "cash or other property";* and none of the parties understood that it was. [Italics supplied.]

Applying the reasoning of the above opinion to this case I do not see how it can be said that the stock was "received" by the taxpayer in 1928. Putting the stock in her name in 1928 did not constitute a receipt by her any more than did the writing of checks in the *Avery* case. There, as here, the corporation became a debtor to the stockholders and they became creditors in the earlier year; no doubt that there, as here, the corporation made appropriate book entries in the earlier year. But the creation of a debt in favor of the taxpayer on a cash basis does not result in income to him save in unusual cases as in those where the doctrine of constructive receipt may be applicable. Here there is no showing of availability to the taxpayer in 1928 or that she understood the dividend to be available before 1929. The letter of the president of the corporations, dated September 27, 1928, notified the stockholders that the dividend shares would be mailed "as soon as it is practicable to do so, which should be on or before January 2, 1929." There is nothing in that notice to lead the stockholders to expect actual distribution in 1928, and, in fact, this taxpayer did not receive her dividend shares until 1929. On the fact of actual receipt in 1929, and in the absence of any showing either that the corporation intended to distribute in 1928 or that the stockholders had any reason to expect receipt in that year, I think we should adhere to the fundamental rule of taxing income in the year of receipt, which in this case is the year 1929.

BLACK agrees with this dissent.