*853 OPINION.
Aeundell :
The syndicate, of which the petitioners were' members, was organized in July 1928 for the sole purpose of raising funds to enable the Italo Corporation to make the cash payments required by its contracts of purchase of the assets or stock of various corporations. A careful reading of the articles under which the syndicate was organized discloses that the syndicate manager had no authority to go further than the raising of such funds, the payment of the debts of the Italo Corporation, and distribution of the remaining proceeds among the syndicate members. The life of the syndicate was limited, and it was to engage in but the one operation.
The syndicate performed its functions, not as originally contemplated through the taking over of the Italo Corporation’s contracts, but through what in substance was the purchase and sale of Italo Corporation stock. The petitioners say that there was no sale of the stock to the syndicate. The facts establish that there was a sale. The stock was placed in escrow, the syndicate paid to the trustee certain of the funds advanced by its members and drew down a block of stock which was sold and the proceeds used to draw down additional stock and, in the words of the stipulation, “ These operations were repeated until December 20, 1928, when total payments were made by the syndicate manager to the trustee in the total sum of $3,400,000.” This, in our opinion, was a purchase and sale of Italo Corporation stock by the syndicate. All the parties knew the amount of stock that the syndicate was to take and all knew the amount that it was to pay in to get the stock. Consequently, the price of each share was ascertainable. This being determined, any amount received on any share in excess of cost was gain in the year of sale. The gain on the purchase and sale, less expenses, amounted to $662,211.60 and dividends amounted to $51,843.50. The respondent has treated as income to each petitioner his pro rata share of such income and dividends. In the case of petitioner Perata, his share amounted to $46,703.52 and he actually received within the year $43,750. The shares and receipts of the others were in proportion to their interests. We see no reason at all why the amount actually distributed was not income to each of the petitioners. There can be no question of the return of capital in these cases because, as set out in the findings, the respondent in calculating the gain has taken into consideration the cost of each share sold and thereby allowed full capital return before computing net income. The respondent has not treated as income any amount with respect to the stock held by the syndicate at the close of the year.
Nor do we see any error in the inclusion of income in each case of an amount somewhat in excess of the sum actually distributed *854 to each petitioner within the year. The amount so included in income was each petitioner’s distributive share of gain made by the syndicate on the shares of stock purchased and sold within the year plus dividends received by the syndicate within the year. This syndicate was, as petitioners say, a joint venture. As such, its income was their income. Walter S. Dickey, 14 B. T. A. 1295; McCausey v. Burnet, 50 Fed. (2d) 491; Mark L. Gerstle, 33 B. T. A. 830. The facts in these cases distinguish them from the case of Wild v. Commissioner, 62 Fed. (2d) 777. In the Wild case, the syndicate was a continuing enterprise in which the corporate manager was to use the funds to buy and manage securities and for whatever purpose it thought advisable, and'the syndicate was to last until the manager ended the venture at its pleasure. Here the syndicate was formed for the limited purpose of aiding the Italo Corporation in the purchase of certain properties and this aid took the form of the purchase of Italo shares and their resale. The life of the venture was limited to one year, with power in the manager to extend it to 18 months. Within the year 1928 it had served its function. It had performed its duty to the Italo Corporation, had received the stock to which it was entitled and had nothing left to do but to distribute and dissolve. Some point is made of the fact that on the books the syndicate owed $33,228.53 at the close of the year. Upon this it is argued that the transactions were not closed in 1928. Opposed to this view is the fact that dividends had been declared by the Italo Corporation on the syndicate stock sufficient to offset this sum. It was obviously intended that the dividends were to be used as an offset, as was formally done in 1929, otherwise the Italo Corporation would not have released the stock to the syndicate in 1928, and the failure of the parties to make book entries can not be said to have kept the transactions open. It is also pointed out that the syndicate manager was entitled to a commission on the profits of the syndicate; that this had not been paid and could not be calculated until the syndicate was completely wound up. This is not a sufficient reason for carrying over to a subsequent year the profits actually realized on the purchase and sale of stock in 1928. Cf. Burnet v. Sanford & Brooks Co., 282 U. S. 359. The manager’s commission can bo calculated on the profits made in 1928. In Heinz v. Commissioner, 70 Fed. (2d) 461, where an attempt was made to carry over profits by reason of the failure to make final distribution, the court said :
* * * It was not open to the petitioner or his agent, the syndicate or its manager, to avoid the inclusion in his gross income for 1928 of his share of the syndicate’s undistributed profits by postponing beyond the end of that year the ascertainment of the exact amount of that share or the actual delivery to the petitioner of the amount of profits to which he was entitled. *855 Wright v. Commissioner (C. C. A. 50 F. (2d) 727; Newman v. Commissioner (C. C. A.) 41 F. (2d) 743; Webb v. Commissioner (C. C. A.) 67 F. (2d) 859.
We therefore conclude that the Commissioner did not err in including in petitioners’ gross income their shares of the profits made on the sales of stock and of the dividends, but we can not agree that the amounts reached by the respondent are in all respects correct. A part of this income was composed of dividends, which should be taxed to the members only at surtax rates. Furthermore, the syndicate manager was entitled to a commission of 2% percent on all income received and disbursed by him. Adjustments should be made for these purposes; otherwise the respondent is affirmed on the issues growing out of the syndicate operations.
The dividends in issue in the case of petitioner Bolandelli for the year 1929 are dividends on the same stock as was involved in the case of Elvira Scatena, 32 B. T. A. 675. In that case, as this, the question was whether such dividends were income in the year 1928 or 1929. Following our holding in the Scatena case, we hold here that the dividends represented by stock of the Bank of America National Association were income to this petitioner in the year 1928. The respondent by affirmative answer has asked that the deficiency for 1928 be increased accordingly in the event it is held that the dividends were income in that year. This will be done on recom-putation; and in accordance with the stipulation the profit on disposition of the dividend shares in 1929 will also be adjusted.

Decision will be entered in each case under Rude 50.