VERN REALTY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1294–71.    Filed September 21, 1972.

*Lester H. Salter* and *James R. McGowan*, for the petitioner.
*Barry J. Laterman*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency of $9,396.77 in petitioner's Federal income tax for its taxable year ending June 30, 1968. The only issue presented for decision is whether, within the meaning of section 337(a),[1] all of the assets of petitioner, less assets retained to meet claims, were distributed within 12 months after the adoption of a plan of complete liquidation.

### FINDINGS OF FACT

Vern Realty, Inc. (hereinafter referred to as petitioner), is a liquidated Rhode Island corporation which formerly had its principal office at 812 Industrial Bank Building, Providence, R.I. Petitioner filed its Federal income tax return for the taxable year July 1, 1967, through June 30, 1968, with the director, Internal Revenue Service Center, Andover, Mass.

Petitioner was organized under the laws of Rhode Island on July 8, 1959, to engage in the trade or business of renting real estate. Throughout the period of petitioner's business activity, it reported its income on a cash basis, using a fiscal year ending June 30. Its accounting records consisted solely of a checkbook in which were recorded the receipts of rent and the disbursements of expenses. During this period, Ronald H. Nani (hereinafter referred to as Nani) was the president and treasurer of petitioner.

At all relevant times, petitioner's individual shareholders filed their Federal income tax returns on the cash basis method of accounting.

Petitioner's initial capitalization of $6,700 was paid in by Nani and Verna J. Nani (hereinafter referred to as Verna). In return, they each received 200 shares of petitioner's no-par-value common stock. This represented all of petitioner's outstanding stock.

On July 15, 1959, petitioner purchased an office building (hereinafter referred to as the office building) located at 1039 Reservoir Avenue, Cranston, R. I., at a cost of $31,500. On the date of purchase, there were two tenants in the building. Subsequently, one tenant took over the rental of the entire building.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.

On August 20, 1963, Verna contributed 100 of her shares of petitioner's no-par-value common stock to petitioner and these shares were retired. On the same date, she made a gift of 50 shares of petitioner's no-par-value common stock to each of her children, Rhonda S. Nani and Douglas R. Nani. Also, on that date, Nani made identical gifts to the two children.[2] The result was that thereafter Nani, Rhonda S. Nani, and Douglas R. Nani each owned one-third of petitioner's outstanding stock.

Petitioner, on December 27, 1967, purchased an apartment building (hereinafter referred to as the apartment building) located at 1049 Reservoir Avenue, Cranston, R. I., at a cost of $17,000. The building was purchased for possible use in expanding petitioner's office building. Petitioner never rented this building. The apartment building and the office building represent all the property petitioner owned, with the exception of a small amount of cash in its checking account.

On February 15, 1968, at a special meeting of petitioner's shareholders, a plan[3] was adopted for the complete liquidation of petitioner which would meet the requirements of section 337. The desire to liquidate petitioner was prompted by the presence of a prospective buyer who wished to acquire petitioner's office building. On March 14, 1968, the information return which section 6043 directs corporations to file within 30 days after the adoption of a resolution or plan of dissolution, or complete or partial liquidation, was forwarded by petitioner to the district director of internal revenue, Providence, R. I.

On March 15, 1968, petitioner sold the office building for a gross sales price of $66,500 and realized gain of $37,610.13 on the sale. The net proceeds of $38,000 were placed in petitioner's checking account. On April 5, 1968, petitioner opened a savings account in its name at the Citizens Savings Bank, Providence, R. I., and the proceeds from the sale were transferred to that account. Due to Nani's position as the principal officer of the corporation, he was the only person authorized to draw on the savings account in petitioner's behalf.

Petitioner's checking account in the Citizens Trust Co., Providence, R. I., was closed by Nani on February 12, 1969,[4] and by that date its expenses had been paid. By February 15, 1969, 12 months after the date of the adoption of the plan of liquidation, all of petitioner's business

---

[2] On Aug. 20, 1963, Rhonda S. Nani and Douglas R. Nani were minors, aged 4 and 1, respectively. At all relevant times, Nani was the legal guardian of these children.

[3] According to the minutes of that meeting, the plan provided that "all of the Company's assets (less assets retained to meet claims) will be distributed to the Company's stockholders in complete cancellation of its stock within the 12-month period beginning on the date of the adoption of said Plan of Complete Liquidation."

[4] On Feb. 12, 1969, two checks were written on the account. The first was to cover a mortgage payment on the apartment house. The second was to close out the $5.96 balance in the account.

activity ceased. Its assets consisted of the apartment building and $39,442.89 on deposit in its savings account, while its liabilities were a $10,551.85 mortgage on the apartment building and a $5,505.11 debt owed to Nani.

In satisfaction of the debt to Nani, petitioner transferred the apartment building, subject to the mortgage, to him by warranty deed on March 10, 1969. Nani sold the building on July 23, 1969, for a gross sales price of $17,000.

Nani did not close petitioner's savings account until March 13, 1969. At that time, the money was redeposited in the Citizens Savings Bank, Providence, R. I., in three equal savings accounts for the shareholders.

In its income tax return for the period July 1, 1967, to June 30, 1968, petitioner included a notation regarding the sale of its office building but stated the transaction was not taxable because of the provisions of section 337. The balance sheets attached to that return showed that petitioner had cash on hand in the amount of $2,845.76 at the beginning of the fiscal year and $40,035.86 at the end of the fiscal year. Consistently, the balance sheets attached to petitioner's return for the period July 1, 1968, to March 12, 1969, showed that petitioner had cash on hand at the beginning of that period in the amount of $40,035.86.

In his notice of deficiency, respondent determined that petitioner had failed to comply with the provisions of section 337(a) in that it did not distribute all its assets in complete liquidation, less assets retained to meet reasonable claims, within the 12-month period after the adoption of the plan of complete liquidation.

### OPINION

Section 337(a) [5] lays down the general rule that no gain or loss is recognized to a corporation on the sale or exchange of its "property" if (1) it adopts a plan of complete liquidation on or after June 22, 1954, and (2) within the 12-month period following the adoption of plan, "all" of the assets of the corporation, except "assets retained to meet claims," are "distributed in complete liquidation." The application of this general rule to particular facts can often be complicated by the numerous other requirements set forth in the section and various other lurking problems. The only issue presented in this case, however, is whether petitioner distributed all of its assets, except

---

[5] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

   (a) GENERAL RULE.—If—

     (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

     (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

assets retained to meet claims, within the prescribed 12-month period. We are compelled to conclude that it did not.

The congressional objective in enacting section 337 was "to provide a definitive rule which will eliminate the * * * uncertainties" flowing from the application of *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950), and *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945). S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 258 (1954). Significantly, the section provides for the nonrecognition of losses, as well as gains, if the liquidation falls within its terms. See *Beauchamp & Brown Groves Co.*, 44 T.C. 117, 123–124 (1965), affd. 371 F. 2d 942 (C.A. 9, 1967); cf. sec. 337(c)(2)(B) and *United States Holding Co.*, 44 T.C. 323 (1965). The section is elective in the sense that a taxpayer may plan and execute its liquidation in such a way as to fall within or without the rules of the section. However, if the transaction fits the fact situation described by the Code, the provision must be applied. Thus, an interpretation of the section which is unduly lenient as to one taxpayer may be unduly harsh as to another. Such an interpretation may cause the section to be complicated by unnecessary uncertainty and thus become a "trap for the unwary." This result would frustrate the congressional quest for certainty reflected by the enactment of the section. S. Rept. No. 1622, *supra* at p. 49.

In the present case, there is no dispute as to when the plan of liquidation was adopted. The parties have stipulated that the shareholders of petitioner, on February 15, 1968, "adopted a plan of complete liquidation of petitioner under Section 337 of the Internal Revenue Code of 1954." Thus, to avoid a tax on the gain derived from the sale of its office building, petitioner was required to show that all of its assets, except assets required to pay claims, were distributed within 12 months of that date.

When the plan of liquidation was adopted, petitioner owned the office building, an apartment building which it had never rented, and a small amount of cash in a checking account. During the following year, nothing transpired with respect to the apartment building. It was still owned by petitioner at the end of the 12-month period. In March and April 1968, petitioner sold its office building and deposited the net proceeds of the sale in a savings account carried in petitioner's name. The funds were not withdrawn from this account and paid over to the shareholders until March 13, 1969, almost 13 months after the plan of liquidation was adopted.

The apartment building had a value of $17,000 and this sum approximated the unpaid mortgage on the building plus petitioner's debt to Nani. Nani testified that he tried to sell the apartment building but decided that, if he was unable to sell it, he "would deed it over to * * *

[his] name, subject to the mortgage, so that the excess of the value would be enough to satisfy my outstanding obligation from the corporation." However, this was not done until March 10, 1969, more than 12 months after the plan of liquidation was adopted.

Petitioner claims that it was not required to distribute the apartment building or its proceeds on the theory that it was reserved to pay the mortgage against it and the debt to Nani. However, notwithstanding the informalities which usually characterize the management of the affairs of a small, closely held corporation, we are not satisfied that the apartment building was in fact reserved to pay petitioner's debts. Section 1.337–1, Income Tax Regs., provides that "Any assets retained after the expiration of the 12-month period for the payment of claims (including unascertained or contingent liabilities or expenses) must be specifically set apart for that purpose." Petitioner did not fulfill this requirement because nothing was done specifically to set apart the apartment building within the 12-month period for the payment of claims. We are not convinced that petitioner's failure to sell the apartment building, deed it to Nani in satisfaction of his claim, or otherwise set it apart in some way within the 12-month period is not explained by the same neglect which characterized his failure to cause the corporation to dispose of the proceeds of the sale of the office building.[6]

However, we do not rest our decision on petitioner's retention of the apartment building alone. More serious was the failure to distribute the office building sale proceeds. Nani, the sole shareholder, is a practicing accountant, and he knew of the 12-month requirement, evidently having handled other liquidations for his clients. Implicitly he admitted in his testimony that he did not cause the distribution of these funds within the 12-month period, explaining that "It was merely an error on my part in marking my calendar on the wrong date of that form, picking up March 14 rather than February 15, which made me twenty some days late in calendaring my notice." Section 337, unfortunately for petitioner, has no escape clause to permit disregard of the statutorily prescribed period for effectuating a distribution on such grounds.

The evidence is clear that petitioner did not regard the office building proceeds as having been distributed within the 12-month period. Such proceeds were deposited in a bank account maintained in the

---

[6] Nani testified as to his reasons for not causing petitioner to distribute the cash, as follows:

"I am a public accountant. January is the worst month of the year for us. I just was so busy I never got around to doing it. I usually mark these things a week or two before they are due. I negligently waited until the last minute to do it and I did not have the time to do it in January which, as I answered earlier, was the worst month of the year of practitioners."

name of the corporation. No steps were taken to transfer them to the shareholders until after the 12-month period had expired. As noted in our Findings, the balance sheet attached to petitioner's income tax return for the fiscal year ending June 30, 1968 (signed March 13, 1969), reflects an increase in cash on hand from $2,845.76 to $40,035.86 during the year, together with a corresponding decrease in its assets consisting of buildings and other fixed depreciable assets. This increase in cash reflected the receipts from the office building sale. Similarly, the balance sheet attached to petitioner's income tax return for the period July 1, 1968, to March 12, 1969, reflects cash on hand at the beginning of that period in the amount of $40,035.86. Thus, petitioner treated the deposit in the savings account as its asset, not as cash which it had distributed to its shareholders.

It is undoubtedly true that a corporation's transfer of assets, effective as between it and its transferee, would qualify as a distribution within the meaning of section 337. *Bird Management, Inc.*, 48 T.C. 586, 593 (1967). However, these funds were deposited in the savings account on April 5, 1968, and nothing is shown to have happened to them within the statutory 12-month period. Nani testified that he did not distribute these funds immediately because he thought there were "tax advantages" to the shareholders in deferring the receipt of these payments from 1968 to 1969. No explanation has been offered as to how the funds could have been distributed by petitioner during the 12-month period without their having been received by the shareholders for the purposes of computing their income tax liabilities.

We hold petitioner failed to distribute the funds within the 12-month period and that such failure is fatal to its claim to the benefits of section 337. If the petitioner had sustained a loss on the sale of the office building and, after the adoption of a plan of liquidation, had decided to avoid section 337 by delaying the distributions beyond the 12-month period, we cannot perceive how it would have acted differently.

Both parties have extensively briefed an argument by petitioner that the office building sale proceeds were constructively received by the shareholders within the 12-month period and, therefore, must be regarded as distributed by petitioner. The doctrine of constructive receipt may be concisely stated: "Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given." Sec. 1.451-2(a), Income Tax Regs.

We are not satisfied that the doctrine of constructive receipt as

applied to the shareholders provides the correct criterion for determining whether a corporation has "distributed" its assets for the purposes of section 337. That section is directed entirely to action by the corporation. The accompanying congressional report explicitly states that "It is intended that all of the property except property retained to meet claims must be distributed by the corporation." S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 259 (1954).

We find nothing in the language or legislative history of the section which suggests that assets have been distributed by the corporation if they have been "made available" to the shareholders so that they may "draw upon" the funds at any time. Sec. 1.451–2(a), Income Tax Regs. Indeed, the implication of the regulations interpreting section 337(a) is that this is not enough to constitute a distribution. Thus, for shareholders who cannot be located, section 1.337–2(b), Income Tax Regs., contemplates that their funds will be transferred to "a State official, trustee, or other person authorized by law to receive distributions for the benefit of such shareholders." Cf. *Mountain Water Co. of La Crescenta*, 35 T.C. 418 (1960). Moreover, in a variety of situations the courts have recognized that there is no necessary correlation between the constructive receipt and the constructive payment of funds. See, e.g., *Mass. Mutual Life Ins. Co.* v. *United States*, 288 U.S. 269, 274 (1933); *Vander Poel, Francis & Co.*, 8 T.C. 407, 411–412 (1947); and *Cox Motor Sales Co.*, 42 B.T.A. 192, 196 (1940). We have found no case applying the constructive receipt doctrine under section 337(a).

Petitioner relies upon such cases as *Fetzer Refrigerator Co.* v. *United States*, 437 F. 2d 577 (C.A. 6, 1971), and *Hyplains Dressed Beef, Inc.*, 56 T.C. 119 (1971), to support its proposition that constructive receipt is the appropriate standard. However, those cases arose under section 267(a)(2) which disallows deductions for items of unpaid expenses and interest on stated conditions. One of the conditions requires consideration of whether the amounts of the disputed items are includable in the gross income of the person to whom the payment is to be made, and the regulations (sec. 1.267(a)–1(b)(iii)) under that section expressly provide that the doctrine of constructive receipt may be used to determine when this has occurred. No such provision appears in section 337(a). For this reason, the cases arising under section 267(a)(2) are not apposite.

In any event, we do not think the funds derived from the office building sale were constructively received by petitioner's shareholders within the 12-month period. The mere adoption of a resolution to competely liquidate a corporation does not vest in the shareholders a right to the liquidating distributions that is sufficient to invoke the

doctrine of constructive receipt. This is true even though the funds in the hands of the corporation are controlled by individuals as corporate officers who are also shareholders. *Lacy Contracting Co.*, 56 T.C. 464, 470 (1971). There must be some action manifesting an intention on the part of those individuals to take the property as their own. *Ochs v. United States*, 158 Ct. Cl. 115, 123, 305 F. 2d 844, 849 (1962).

The issue as to whether Nani manifested an intention to take the office building proceeds for himself and his children is factual. We do not think he did. We have pointed out that he testified that he delayed the distribution so that the gain would be taxed in 1969 rather than 1968; thus, he did not intend to take the funds in 1968. He confirmed that the funds continued to belong to the corporation by showing them as assets in the balance sheets attached to the corporation's last two returns; both returns were signed after the expiration of the crucial 12-month period. He testified that he failed to make the distribution in January 1969 due to "neglect" and that he failed to do so in February due to the error in marking his calendar. We do not think the closing of the corporation's checking account on February 12, 1969, shows any intent to distribute the funds in the savings account. In sum, we find no evidence manifesting an intention on Nani's part to take the funds until the corporation's savings account was closed, after the 12-month period had expired. See *Glore v. United States*, an unreported case (N.D. Ill. 1954, 48 A.F.T.R. 1310, 54–2 U.S.T.C par. 9593); *J. T. Hatfield*, 32 B.T.A. 1 (1935); and *Mrs. Grant Smith*, 26 B.T.A. 1178 (1932).

Petitioner argues that the February 15, 1968, corporate resolution providing for the distribution of the corporate assets within the prescribed period was self-executing and effected a distribution without further formal corporate action. As authority for this principle, petitioner cites such cases as *John E. Byrne*, 54 T.C. 1632 (1970), affirmed per curiam 449 F. 2d 759 (C.A. 8, 1971); *Bird Management, Inc., supra; Commissioner v. Scatena*, 85 F. 2d 729 (C.A. 9, 1936), affirming 32 B.T.A. 675 (1935); and *Minal E. Young, Executor, et al.*, 6 B.T.A. 472 (1927). These cases are distinguishable on their facts.[7]

---

[7] In three of the cases (*John E. Byrne*, 54 T.C. 1632 (1970), affirmed per curiam 449 F. 2d 759 (C.A. 8, 1971); *Bird Management, Inc.*, 48 T.C. 586 (1967); and *Commissioner v. Scatena*, 85 F. 2d 729 (C.A. 9, 1936), affirming 32 B.T.A. 675 (1935)), there was an actual corporate transfer either to the shareholders or to a person who received the property for the shareholders. Some of the cases (*John E. Byrne, supra; Commissioner v. Scatena, supra;* and *Minal E. Young, Executor, et al.*, 6 B.T.A. 472 (1927)) involved a mere delay in the issuance of stock certificates or voting trust certificates where the rights of the shareholders existed before the receipt of the certificates. Although petitioner claims that its savings account "like the stock interest in *John E. Byrne, supra,* may be beneficially owned by a person lacking certificates or other written evidence of ownership," we find no support in the record to justify such a conclusion in this case. The savings account at all pertinent times was in petitioner's name, and, as discussed in the text, there was no showing that petitioner attempted to distribute the ownership of the account during the 12-month period.

1014

To support its contention that a distribution occurred within the 12-month period, petitioner also refers us to *Gensinger* v. *Commissioner*, 208 F. 2d 576 (C.A. 9, 1953), affirming in part and reversing in part 18 T.C. 122 (1952), for the principle that the timing of a liquidating distribution to a shareholder of a closely held corporation depends on what was actually intended. The argument is that the shareholder resolution of February 15, 1968, evidenced this intent and is thus sufficient to warrant a finding that a distribution occurred within the 12-month period. The court in that case observed (p. 582) :

Where both the power to distribute property and the sole equitable right to it are held by a single person, who is both "distributor" and "distributee", and the only person with any interest in the matter, we see no reason why any more should be required to prove a "distribution" than that the person intended to presently take the property as his own, and that this intention was manifested in some manner.[4] [Footnote omitted.]

This analysis does not apply in the instant case for two reasons. First, the court in the above statement was referring to a period after a shareholder had become a trustee in dissolution under local law. The court expressly rejected (p. 579) the argument that this principle applies where, as in the instant case, the corporation has done nothing except adopt a resolution to distribute its assets within a stated period. The second reason is that, as discussed above, there was no objective manifestation on the part of petitioner's shareholders of an intention to take these funds as their own within the 12-month period.

We hold that petitioner did not comply with the requirements of section 337(a) and is, therefore, taxable on the disputed gain.

*Decision will be entered for the respondent.*