CASA LOMA, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Casa Loma, Inc. v. Commissioner
Docket No. 11317-76.
United States Tax Court
T.C. Memo 1980-78; 1980 Tax Ct. Memo LEXIS 505; 39 T.C.M. (CCH) 1251; T.C.M. (RIA) 80078; March 19, 1980, Filed Frank Mast and W. Rodgers Moore, for the petitioner. Michael A. Yost, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's income taxes as follows: Year
Addition to Tax
Ended
Deficiency
Sec. 6653(a)
Total
6/30/70
$ 4,017
$ 201
$ 4,218
6/30/71
1,669
83
1,752
6/30/72
42,338
1,721
44,059
6/30/73
626
31
657
6/30/74
35,255
0
35,255
Concessions having been made by petitioner, the issues remaining for decision are: 1. Whether petitioner failed to qualify for nonrecognition treatment under section 337 [1]/ and thus must recognize long term capital gain realized upon *506 the condemnation of its business premises in the amounts of $114,705 and $46,640 for the taxable years ended June 30, 1972, and June 30, 1974, respectively, as well as ordinary income in the amount of $20,618 which was received as detention damages from the Commonwealth of Pennsylvania in the tax year ended June 30, 1974. 2. Whether petitioner is liable for additions to tax under section 6653(a) resulting from the erroneous reporting and carryback of a loss on the sale of fixtures in the tax years ended June 30, 1970 through June 30, 1973. FINDINGS OF FACT At the time of filing its petition, petitioner Casa Loma, Inc.'s principal place of business was located in McKeesport, Pennsylvania. Petitioner filed corporate income tax returns for the fiscal years ended June 30, 1970 through june 30, 1972, with the Philadelphia Service Center, Philadelphia, Pennsylvania. Petitioner retained Ray Cegelski (Cegelski), a certified public accountant, to prepare its tax returns from 1968 through the fiscal year ended June 30, 1972. Its returns *507 for the fiscal years ended June 30, 1973, and June 30, 1974, were filed with the District Director, Pittsburgh, Pennsylvania. H. G. Ahlquist, a certified public accountant, prepared these returns. Petitioner reported its income and deductions on the accrual basis. Since its incorporation in July 1958, petitioner's sole business consisted of the operation of a bowling alley and the sale therein of food and beverages, including liquor. On August 22, 1971, petitioner adopted a plan for complete liquidation. At that time, petitioner owned, among other assets, real property located at 2215 Lincoln Way, McKeesport, Pennsylvania (the property). The property was improved by a building containing all the fixtures and equipment necessary to operate a bowling alley and lounge. On August 25, 1971, the Commonwealth of Pennsylvania filed a "Declaration of Taking" with the Court of Common Pleas in Allegheny County to effect the condemnation of the property. On March 20, 1972, the Department of Transportation of the Commonwealth of Pennsylvania (the department) agreed to pay petitioner $473,076 for the condemned property. The department allocated $280,000 of this amount to the real estate *508 with the remaining $193,076 allocated to the fixtures, machinery, and equipment. Petitioner utilized this allocation to report on its return for the year ended June 30, 1972, ordinary gain of $61,256 from the condemnation of the fixtures and equipment. Although petitioner reported long term capital gain of $114,705 from the condemnation of the real property on a supplemental schedule of gains and losses, it did not include this gain in taxable income. Dissatisfied with the amount of the condemnation award, on April 18, 1972, petitioner retained the law firm of Palkovitz and Palkovitz to represent it in the eminent domain proceedings. Petitioner agreed that the law firm would retain 25 percent of any amount awarded in excess of $473,076. Petitioner further agreed to reimburse the law firm for expenses incurred in the proceedings. Acting upon Cegelski's advice, petitioner's board of directors passed a motion on June 20, 1972, to request that attorney Robert Palkovitz (Palkovitz) set up a trust, with Cegelski as trustee, so that petitioner could assign its condemnation claim to the trust in order to comply with the distribution requirements of section 337. Subsequently, however, *509 Palkovitz advised that transferring the claim to the trust would adversely affect the outcome of the condemnation case. As a result, no trust agreement was drawn up or executed. On July 20, 1972, petitioner received $473,076, the amount recommended by the department, for the condemned property. Upon receipt of this payment, petitioner discharged the principal balance of a mortgage encumbering the property in the amount of $139,124.46. Of the remaining $333,951.54, petitioner distributed $317,250 to its shareholders between July 27, 1972, and August 1, 1972. As of August 22, 1972, one year after the adoption of the plan of complete liquidation, petitioner possessed receivables of $8,421.77 consisting of claims for the refund of various escrow funds, taxes, prepaid expenses, and canceled insurance policies. [2]/ Petitioner also possessed a liquor license and its claim for further compensation in the condemnation proceeding with respect to its real property. As of October 2, 1972, petitioner had $25,108.94 on deposit in a savings account and $3,713.24 in a checking account. Part of this cash may represent funds obtained from the liquidation of some of the receivables referred *510 to above. Petitioner had no other cash. No formal corporate action was taken to set aside any part of these assets for the payment of claims. In February 1973, petitioner received $600 from the sale of its liquor license. These proceeds were not included in petitioner's income for the tax year ended June 30, 1973. On June 7, 1974, the condemnation proceedings culminated in a settlement in which petitioner and the department agreed that the property should be valued at $600,000. Additionally, petitioner received "delay compensation" at the rate of 6 percent per annum on $600,000 from June 1, 1972 to July 20, 1972, and on the sum of $126,024 from July 20, 1972, to the date *511 of payment. The delay compensation totaled $21,115.50. Thus, petitioner was entitled to $148,039.50 in excess of the original award of $473,076. On August 7, 1974, the law firm of Palkovitz and Palkovitz distributed the $148,039.50 as follows: Miscellaneous expenses
$11,130.70
Palkovitz and Palkovitz
(attorneys' fees)
37,009.88
Casa Loma, Inc.
99,898.92
The following day, petitioner distributed $98,742 to its shareholders. Petitioner did not include any of the additional award in income in its return for the year ended June 30, 1974. During the period May 3, 1974 through January 7, 1975, petitioner invested $46,000 in bank notes. Of this sum, during the period January 13, 1975 through July 24, 1975, petitioner invested $45,000 in United States Treasury Bills. On July 7, 1976, petitioner distributed $35,265 to its shareholders. As of the date of trial, petitioner had between $16,000 and $17,000 in its bank accounts. Petitioner continued to file both Federal and State corporate tax returns for the tax years ended June 30, 1975 through June 30, 1978. As of the date of trial, petitioner had not filed a certificate of dissolution with the Commonwealth *512 of Pennsylvania. OPINION Issue 1. Distribution Within 12 Months
Section 337(a) [3]/ provides that if a corporation distributes all of its assets, less those retained to meet claims, within 12 months after adoption of a plan of complete liquidation, then the corporation shall recognize no gain or loss on its sale or exchange of property within the 12-month period. The distribution requirement is strict; unless all assets other than those retained to meet claims are distributed within the requisite period, section 337 will not apply. Vern Realty, Inc. v. Commissioner,58 T.C. 1005, 1009 (1972), affd. per order (1st Cir., Apr. 26, 1973). Any assets retained after the expiration of the 12-month period for the payment of claims must be specifically set apart for that purpose and must be reasonable in amount in relation to the items involved. Sec. 1.337-1, Income Tax Regs. Further, the 12-month period begins on the date that the plan of complete liquidation is adopted and cannot be extended. *513 In Vern Realty, Inc. v. Commissioner,supra at 1009, this Court explained: The congressional objective in enacting section 337 was "to provide a definitive rule which will eliminate the * * * uncertainties" flowing from the application of United States v. Cumberland Pub. Serv. Co.,338 U.S. 451 (1950), and Commissioner v. Court Holding Co.,324 U.S. 331 (1945). S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 258 (1954). Significantly, the section provides for the nonrecognition of losses, as well as gains, if the liquidation falls within its terms. See Beauchamp & Brown Groves Co.,44 T.C. 117, 123-124 (1965), affd. 371 F.2d 942 (C.A. 9, 1967); cf. sec. 337(c)(2)(B) and United States Holding Co.,44 T.C. 323 (1965). The section is elective in the sense that a taxpayer may plan and execute its liquidation in such a way as to fall within or without the rules of the section. However, if the transaction fits the fact situation described by the Code, the provision must be applied. Thus, an interpretation of the section which is unduly lenient *514 as to one taxpayer may be unduly harsh as to another. Such an interpretation may cause the section to be complicated by unnecessary uncertainty and thus become a "trap for the unwary." This result would frsutrate the congressional quest for certainty reflected by the enactment of the section. S. Rept. No. 1622, supra at p. 49. Petitioner's shareholders adopted a plan of complete liquidation on August 22, 1971. Consequently, to comply with section 337, petitioner was required by August 22, 1972, to distribute all of its assets except those retained specifically to meet claims. As of August 22, 1972, petitioner possessed cash and receivables of approximately $33,000, [4]/ a liquor license, and a claim against the Commonwealth of Pennsylvania stemming from the condemnation of petitioner's property. No corporate action had been taken to set these assets aside for the payment of claims, and there is no credible evidence of the exercise of corporate judgment as to the relationship of the total amount of such claims to the value of the retained assets. *515 Petitioner argues that the assets retained were owned by the shareholders, rather than petitioner. Petitioner reasons that, under Pennsylvania law, the surrender of endorsed stock certificates by the shareholders to the corporate treasurer for cancellation constitutes a de facto dissolution of the corporation which vests ownership of all assets in the shareholders.Petitiner cites Commonwealth v. Passell,422 Pa. 473, 223 A.2d 24 (1966), as support. Passell, however, fails to justify petitioner's contention. First, although the record contains some testimony that the shareholders "presented their certificates" when receiving payment, we are not convinced that the shareholders surrendered their endorsed stock certificates for cancellation. Moreover, Passell was narrowly restricted; it does not stand for the proposition that all corporate property becomes vested in the shareholders when they surrender their stock even though the corporation has outstanding debts. Here, petitioner had outstanding liabilities. Further, petitioner's shareholders, on advice of their attorney, deliberately chose not to distribute all of petitioner's assets, particularly the *516 condemnation claim. Thus, Passell provides no support for petitioner's position. Petitioner also contends that a trust was created to which the assets were transferred, and that, therefore, it has shown that it timely distributed its assets. If such were true, the requirements of section 337 would be met. Cf. Bird Management, Inc. v. Commissioner,48 T.C. 586 (1967); Fibel v. Commissioner,44 T.C. 647 (1965). Again, however, the evidence does not support petitioner's contention. Although the shareholders passed a resolution authorizing their attorney to set up a trust, this resolution was never carried out. Petitioner's attorney advised that assigning the claim would adversely affect the outcome of the condemnation case, and as a result the trust was not created. Petitioner has acknowledged that there was no legal impediment to making such a transfer. The decision not to transfer the condemnation claim evidently was made as a matter of litigation strategy. Section 337 contains no exception which aids petitioner in such circumstances. In summary, we hold that petitioner failed to comply with the 12-month distribution requirement of *517 section 337(a). It adopted a plan of complete liquidation on August 22, 1971, and was informed by its accountant that it should distribute the assets, particularly the condemnation claim against the department, to a trustee for the shareholders. Such assets could not be converted to cash and distributed within 12 months of the adoption of the plan. On advice of its attorney, however, to avoid jeopardizing its condemnation claim, petitioner did not create the trust or make the transfer to a trustee. It still had substantial assets on hand on August 22, 1972, when the 12-month period expired. Nor did petitioner show any reasonable relationship between outstanding claims and its retained assets or take any action to set aside the retained assets to meet these claims. As pointed out in Vern Realty,supra, even though petitioner adopted a liquidation plan which met the requirements of section 337, it had a right nonetheless to execute the plan in such way as to fall without the rules of that section. That is what petitioner did, and as a result section 337 does not apply. Issue 2. Addition to Tax
Respondent has determined that petitioner is liable *518 for an addition to tax under section 6653(a) [5]/ for deficiencies in the years ended June 30, 1970 through June 30, 1973. The deficiencies arose from the erroneous reporting and carryback of an ordinary loss in 1973 on the sale of the fixtures in the bowling alley. In 1972, petitioner correctly reported ordinary gain on the "sale" of the fixtures resulting from the condemnation of the property. Because the directors and officers of petitioner were unsophisticated in taxation, they relied upon their accountants for the preparation of the returns. They made a good faith attempt to furnish the accountants with all necessary information. Consequently, we find that the erroneous reporting and carryback of an ordinary loss was not due to petitioner's negligence or intentional disregard of the rules and regulations. See Conlorez Corp. v. Commissioner,51 T.C. 467, 475 (1968). To reflect the foregoing, Decision will be *519 entered under Rule 155.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
2. / The parties have stipulated that during the fiscal year ended June 30, 1973, petitioner received the following refunds: ↩
1. Refund of bar license excrow
money
$2,164.61
2. Payroll and sales tax payable
refunds
252.61
3. Refunds of prepaid expenses
746.62
4. Escrow fund
3,366.87
5. Insurance refunds on canceled
policies: Elmer P. Erhil Agency
147.00
Shiring Agency
337.00
Tully-Shipley
215.00
Wilson Baum Agency
34.00
McKeesport Insurance Agency
1,158.06
3. / SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS. (a) General Rule.--If-- (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.↩
4. /↩ As detailed in our Findings, on Aug. 22, 1972, petitioner owned, in addition to the claim against the Commonwealth, $8,421.77 in receivables. On Oct. 2, 1972, petitioner had cash in the amount of $28,822.18, some part of which may have been obtained from the liquidation of the receivables.
5. /↩ Sec. 6653(a) provides that an addition to tax in the amount of 5 percent of the underpayment will be assessed "[if] any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations."