COMMERCIAL SECURITY BANK, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5652–79.    Filed July 29, 1981.

*John S. Nolan*, for the petitioner.
*Robert N. Armen*, for the respondent.

OPINION

TANNENWALD, *Chief Judge*: Respondent determined deficiencies in the Federal income taxes of Orem State Bank (Orem) of $2,793.20 and $86,510.06 for the taxable years ending December 31, 1973, and June 14, 1974. Petitioner has accepted liability for all deficiencies adjudged against Orem as transferee of Orem's assets and liabilities. See sec. 6901 et seq.[1] Because of concessions by petitioner, the issues remaining concern the proper tax treatment of accrued but unpaid deductible expenses and accrued but unreceived items of ordinary income in the short taxable year of Orem's complete liquidation.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.

The stipulation of facts and exhibits are incorporated herein by this reference.

Petitioner is a Utah corporation with its principal place of business in Ogden, Utah. Petitioner reports its taxable income using the accrual method of accounting.

Orem was a Utah corporation with its principal place of business in Orem, Utah. Orem filed its Federal income tax returns on a calendar year basis using the cash receipts and disbursements method of accounting. Orem's last taxable year ended on June 14, 1974, because it ceased to exist as of that date. See secs. 443(a)(2), 441(b)(3).[2]

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during 1974.

[2]June 14, 1974, was the date when Orem disposed of all of its assets and liabilities. It was

Orem's complete liquidation met the requirements of section 337(a). Within a 12-month period after adopting its plan of liquidation, Orem sold its assets to petitioner in consideration of the payment of $1,175,000 in cash and the assumption by petitioner of all of Orem's existing obligations and liabilities (including any Federal or State income taxes of Orem due by reason of the transaction).[3] Petitioner determined the price it was willing to pay for Orem's assets on the basis of estimating all of Orem's items of income and expense as if Orem were on the accrual basis at the time of closing of the sale. Among the "accruable" items were:

(a) *Accrued interest receivables*

| | |
|---|---|
| U.S. Government securities | $5,173.35 |
| U.S. Government agency securities | 10,227.23 |
| Commercial loans | 31,936.07 |
| Trust receipts | 3,544.61 |
| Real estate loans | 17,457.27 |
| Total | 68,338.53 |

(b) *Accrued business liabilities*

| | |
|---|---|
| Interest expense—all deposits | [1] $120,786.75 |
| Wage expense—fringe benefits | 4,570.00 |
| Insurance expense—group plan | 135.60 |
| Repairs/maintenance expense | 34.00 |
| Accountant's fee | 800.00 |
| Computer processing expense | 3,718.25 |
| Total | 130,044.60 |

[1] Included in this sum are a variety of items of interest payable by Orem at varying times and subject to varying conditions in respect of savings accounts, investment certificates, so-called Golden Passbooks, and Golden Bonus certificates and time certificates of deposit (regular and public).

Orem's final tax return included the "accrued interest receivables" in income and deducted the "accrued business liabilities." Respondent accepted Orem's inclusion in income of the items of "accrued interest receivables" but disallowed the deduction of the "accrued business liabilities." Those liabilities appear to represent items of a character which

---

certified as dissolved on Oct. 7, 1974, and presumably its complete liquidation was carried out between June 14 and then. The parties have treated Orem's last taxable year as ending on June 14, 1974, and we will do the same.

[3] Such assumption is the basis of petitioner's conceded liability herein as transferee.

would have been deductible by Orem when paid under sections 162 and 163, and respondent has not contended otherwise.[4]

Petitioner's primary position accepts the inclusion of the "accrued interest receivables" in Orem's income but disputes the denial of the deduction of the "accrued business liabilities." It contends that its assumption of those liabilities should be treated as the receipt of an equivalent amount of cash to Orem and the payment of those liabilities by Orem, with the result that the deductions therefor were properly taken by Orem in its final return.[5] Alternatively, petitioner argues that Orem was at least entitled to offset a portion of the liabilities representing accrued interest payable against the "accrued interest receivables." Respondent asserts (1) that, under all circumstances, the inclusion of "accrued interest receivables" in Orem's income was proper, (2) that, by claiming a deduction for the "accrued business liabilities," Orem changed its method of accounting without obtaining respondent's prior consent (see sec. 446(e)), and (3) that Orem is under no circumstances entitled to deduct any of those liabilities, because it remained a cash basis taxpayer and did not pay them. For reasons which are hereinafter set forth, we agree with petitioner's primary position that the "accrued business liabilities" are deductible in full.

At the outset, we note that there can be no question but that the "accrued interest receivables" were properly includable in Orem's income for its last taxable year, and petitioner does not contend otherwise. *Midland-Ross Corp. v. United States*, 485 F.2d 110 (6th Cir. 1973); *Central Building & Loan Association v. Commissioner*, 34 T.C. 447 (1960).[6] It is also beyond question (and petitioner does not argue otherwise) that the amount of the "accrued business liabilities" would, but for the impact of section 337, have been taken into account in computing

---

[4]Petitioner's opening brief clearly asserts that respondent has conceded the deductible character of the "accrued business liabilities" and respondent's reply brief does not address the issue.

[5]The parties have stipulated that the depositors and certificate holders (see note to table at p. 147 *supra*) neither actually received any payments from Orem nor were their accounts credited by Orem prior to the transfer of its assets to petitioner.

[6]Because the liquidation of Orem apparently took place before actual receipt of the funds, we do not have any issue as to timing of taxability. See *Sol C. Siegel Productions, Inc. v. Commissioner*, 46 T.C. 15, 25 (1966).

Orem's gain or loss from the sale. *Crane v. Commissioner*, 331 U.S. 1 (1947). But it does not necessarily follow that those liabilities are deductible. That, as we see it, is a separate issue.

Orem seeks to deduct only those liabilities which had accrued on the date of sale. It is clear that had Orem simply sold all its assets and retained its liabilities, the deductions now being contested would have been deductible only as the liabilities were actually paid. See note 9 *infra*. It is equally clear, however, that if Orem had retained those liabilities, the amount of cash it would have received would have been correspondingly increased. Indeed, this is the foundation of petitioner's argument that, by accepting less cash for its assets in exchange for the assumption of its liabilities, Orem effectively paid the accrued liabilities at the time of the sale. We agree.

We recognize that Orem, itself, did not actually satisfy the accrued liabilities by direct payment to, or unrestricted crediting of the accounts of, the ultimate obligees. See note 5 *supra*. But in substance, by accepting less cash than it otherwise would have received, it made an actual payment to petitioner which was sufficient to justify the deductions. See *Central Electric & Gas Co. v. United States*, 141 Ct. Cl. 649, 657–659, 159 F. Supp. 353, 358–359 (1958); Rev. Rul. 68–112, 1968–1 C.B. 62. This was the approach adopted in *James M. Pierce Corp. v. Commissioner*, 326 F.2d 67, 71–72 (8th Cir. 1964), revg. 38 T.C. 643 (1962), and it reappeared in *Focht v. Commissioner*, 68 T.C. 223, 236 (1977), wherein we cited *James M. Pierce Corp. v. Commissioner, supra*, to support a comparable approach in another context. See also *Central Electric & Gas Co. v. United States, supra; Van Dyke v. United States*, 156 F. Supp. 155, 159 (E.D. Wis. 1957); cf. *Cooledge v. Commissioner*, 40 B.T.A. 1325 (1939). We emphasize that we are not holding that Orem was making a constructive payment of the liabilities in question—an approach which sometimes presents considerable difficulty where a cash basis taxpayer is involved, particularly with respect to the relationship (or, more properly, the absence of a relationship) between constructive receipt and constructive payment. *Vander Poel, Francis & Co. v. Commissioner*, 8 T.C. 407 (1947); see also *Vern Realty, Inc. v. Commissioner*, 58 T.C. 1005 (1972), affd. by order (1st Cir., Apr. 26, 1973). Consequently, respondent's arguments based upon

sections 1.446–1(c)(1)(i) and 1.461–1(a)(1), Income Tax Regs., limiting deductions to those "actually made" are beside the point.

Respondent's reliance on *Arcade Restaurant, Inc. v. Commissioner*, a Memorandum Opinion of this Court dated August 13, 1948, is misplaced. In that case, we held that the assumption of a corporation's liabilities by its shareholders as part of the corporation's complete liquidation was not a "payment" sufficient to support a deduction of those liabilities on the corporation's final income tax return. Aside from any question as to the "antiqueness" of the case, the fact is that there was no sale or other exchange of value; rather, the shareholders took whatever assets and liabilities the corporation had. In the instant case, however, the amount of cash which Orem received for its assets was diminished by the amount of its liabilities,[7] and it is that diminution which permits a finding of actual payment distinguishing the instant case from *Arcade* and similar cases, such as *Doggett v. Commissioner*, 275 F.2d 823 (4th Cir. 1960), affg. T.C. Memo. 1958–176, and *Julio v. Commissioner*, 69 T.C. 1 (1977).

Respondent argues that to allow Orem the deduction claimed herein will permit a situation akin to a double deduction, because the amount of the liabilities deemed paid by their assumption increases the basis of the assets acquired by petitioner, with a resulting potential tax benefit to petitioner upon the ultimate disposition of those assets, i.e., decreased gain or loss.[8] There is no question but that an increase in basis occurs. *Crane v. Commissioner, supra.* Nevertheless, we think that respondent's argument misses the mark.

Because the purchase price which petitioner paid was equal to the value of Orem's assets less the value of its liabilities, allowing petitioner to increase its basis by the amount of the liabilities assumed simply brings its basis back to the full

---

[7]While it is true that the amount which petitioner paid Orem was settled before the date of closing of the sale, the parties have stipulated that Orem arrived at the sales price by estimating what the values of Orem's assets and liabilities would be on the date of closing. See p. 147 *supra.*

[8]It is clear that petitioner may not deduct any of the accrued liabilities in the year of purchase or at any other time. *Hyde v. Commissioner*, 64 T.C. 300, 306 (1975). See also the cases collected in *M. Buton & Sons, Inc. v. Commissioner*, T.C. Memo. 1972–44.

value of the assets, value paid in part to Orem and in part to the obligees of the accrued liabilities in dispute. See *Crane v. Commissioner, supra* at 13–14. Petitioner's basis is precisely what it would have been had Orem retained its accounts payable and paid them itself, and in such case, the deductions would clearly have materialized. See p. 149 *supra*. Thus, petitioner's basis in the purchased assets is perfectly consistent with allowing Orem the disputed deductions.[9]

Respondent contends that allowing Orem to deduct the accrued liabilities in this case will have the effect of permitting Orem to change its method of accounting without respondent's prior approval. Yet, as we have made clear above, that is not the case; by receiving less for its assets, Orem discharged its liabilities and can be considered as having effectively paid them. Moreover, by requiring Orem to include "accrued interest receivables" in income, respondent has in effect put Orem on an accrual basis as to those items, and we think his reliance on a highly technical reading of his regulations to say that similar treatment should not be accorded to the "accrued business liabilities" is questionable. This observation is, we think, particularly applicable in the instant situation, where the items in question are, as far as this record reveals, not only of a character otherwise qualifying for deduction under sections 162 and 163 (see note to table at p. 147 *supra*), but also appear to have been intimately related to the items of "accrued interest receivables."

Respondent admits that his position in this respect produces a "harsh" result. We note that respondent, himself, utilizing his authority under section 446, to require a taxpayer to change from a completed contract to a percentage of completion method of accounting, has avoided such a "harsh" result in the area of sales of assets in the course of liquidation by cash

---

[9]Had Orem retained its liabilities and then satisfied them itself, it is possible that some of the deductions would not have ripened until Orem's next taxable year (we are assuming that Orem would not have dissolved until after it had paid its debts) because only then would some of the accrued liabilities have become due. Thus, our holding allows some acceleration of deductions. However, because we are faced with liabilities which have already accrued (i.e., would already be deductible in full had Orem been on the accrual basis), the amount of the acceleration is minimal and no more than the usual by-product of accrual accounting. See sec. 1.446–1(c)(1)(ii), Income Tax Regs. Liabilities of a transferor which do not accrue until after the transfer are, of course, deductible by the transferee when paid or accrued. *Hyde v. Commissioner*, note 8 *supra*.

152

basis corporate taxpayers using the completed contract method of reporting income, by allocating not only the income earned from long-term contracts prior to the sale but also a proportionate part of the costs incurred. *Midland-Ross Corp. v. United States*, 485 F.2d 110 (6th Cir. 1973); *Commissioner v. Kuckenberg*, 309 F.2d 202 (9th Cir. 1962), revg. in part 35 T.C. 473 (1960); *Jud Plumbing & Heating, Inc. v. Commissioner*, 153 F.2d 681 (5th Cir. 1946), affg. 5 T.C. 127 (1945); *Standard Paving Co. v. Commissioner*, 13 T.C. 425, 441–445 (1949), affd. 190 F.2d 330 (10th Cir. 1951). See also Rev. Proc. 70–27, 1970–2 C.B. 509. And this Court has been sufficiently flexible to suggest that a cash basis taxpayer be allowed to deduct unpaid items related to income allocated to the taxpayer although not yet received by him. *Carter v. Commissioner*, 9 T.C. 364, 374 (1947), affd. on another issue 170 F.2d 911 (2d Cir. 1948).

*Decision will be entered under Rule 155.*